CHRISTOPHER FROST (SBN 200336)
chris@frostllp.com
BENJAMIN KASSIS (SBN 298844)
ben@frostllp.com
DAVID TIRATURYAN (SBN 350995)
david1@frostllp.com
FROST LLP
10960 Wilshire Boulevard, Suite 2100
Los Angeles, California 90024
Telephone: (424) 254-0441
Facsimile: (424) 600-8504

Attorneys for Plaintiff
NORTHERN LIGHT MEDICAL
MANAGEMENT, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| NORTHERN LIGHT MEDICAL MANAGEMENT, LLC,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN HEALTHCARE SYSTEMS CORP., INC.; WAUKEGAN ILLINOIS HOSPITAL COMPANY, LLC, d.b.a. VISTA MEDICAL CENTER EAST; MIKE SARIAN, individually and as Trustee of the SARIAN FAMILY TRUST; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:26-cv-04980-MCS-BFMx<br><br>*Assigned to: Hon. Mark C. Scarsi*<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF NORTHERN LIGHT MEDICAL MANAGEMENT, LLC'S MOTION FOR ENTRY OF DEFAULT JUDGMENT**<br><br><u>Hearing Information:</u><br>Judge:  Hon. Mark C. Scarsi<br>Date:    August 24, 2026<br>Time:    9:00 a.m.<br>Crtrm.:  7C (7th Floor)<br><br>Action Filed:   May 8, 2026 |

176552.7

# TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................................1

II.  FACTUAL AND PROCEDURAL BACKGROUND .........................................1

    A.   The Settlement Agreement. ...........................................................................1

    B.   The AHS Parties' Defaults Under the Settlement Agreement. ....................2

    C.   Sarian's Interference. ....................................................................................3

    D.   This Lawsuit and Service of Process. ...........................................................4

    E.   Defendants' Defaults. ....................................................................................4

III. LEGAL STANDARD ...........................................................................................4

    A.   Procedural Requirements. .............................................................................4

    B.   Substantive Requirements. ............................................................................5

IV.  ARGUMENT ........................................................................................................6

    A.   The Court Has Jurisdiction and NLMM Has Satisfied the Procedural Requirements. .................................................................................................6

        1.   Subject Matter Jurisdiction. ................................................................6

        2.   Personal Jurisdiction. ..........................................................................6

        3.   Service of Process. ...............................................................................7

        4.   Compliance with Local Rules 55-1 and 55-2. .....................................7

    B.   The Court Should Enter Default Judgment. ..................................................8

        1.   NLMM Will Be Prejudiced Absent Entry of Judgment. .....................8

        2.   The Complaint States Meritorious Claims. ..........................................8

            (a)  The AHS Parties Breached the Settlement Agreement. ..............8

            (b)  Sarian Tortiously Interfered with the Settlement Agreement. .........9

        3.   The Sum at Stake Is Proportionate to Defendants' Conduct. .............11

        4.   No Material Facts Are in Dispute. ......................................................11

        5.   Defendants' Default Was Not the Product of Excusable Neglect. ......12

        6.   The Policy Favoring Decisions on the Merits Does Not Preclude Judgment. ............................................................................................13

    C.   NLMM Is Entitled to the Relief Requested. ...............................................13

        1.   The Relief Sought Conforms to the Complaint's Prayer. ...................13

        2.   Compensatory Damages. ....................................................................14

        3.   Interest. ...............................................................................................15

        4.   Punitive Damages Against Sarian. .....................................................16

            (a)  Nature of the Acts. ....................................................................17

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF NORTHERN LIGHT MEDICAL MANAGEMENT, LLC'S MOTION FOR ENTRY OF DEFAULT JUDGMENT

(b)    Relationship to the Compensatory Award. ................................... 17

(c)    Financial Condition. ........................................................... 18

5.    Reasonable Attorneys' Fees and Costs. ............................................. 20

V.    CONCLUSION ............................................................................. 21

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF NORTHERN LIGHT MEDICAL MANAGEMENT, LLC'S MOTION FOR ENTRY OF DEFAULT JUDGMENT

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Adobe Sys. Inc. v. Kern*,
  No. C 09-1076 CW JL, 2009 WL 5218005 (N.D. Cal. Nov. 24, 2009) ...................................................................................................13

*Air Separation, Inc. v. Underwriters at Lloyd's of London*,
  45 F.3d 288 (9th Cir. 1995) ........................................................................16

*AirDoctor, LLC v. Xiamen Qichuang Trade Co.*,
  134 F.4th 552 (9th Cir. 2025) .....................................................................14

*Akkelian v. Nourian*,
  No. CV 17-1446 PSG (EX), 2019 WL 13040904 (C.D. Cal. Feb. 4, 2019) ...................................................................................................18

*Aldabe v. Aldabe*,
  616 F.2d 1089 (9th Cir. 1980) .......................................................................5

*Ameris Bank v. Key Carrier Grp., Co.*,
  No. 8:23-CV-02430-FWS-KES, 2024 WL 3740093 (C.D. Cal. June 28, 2024) ................................................................................................14

*Bennett v. Am. Med. Response, Inc.*,
  226 F. App'x 725 (9th Cir. 2007) ................................................................16

*Blumenthal Distrib., Inc. v. Comoch Inc.*,
  652 F. Supp. 3d 1117 (C.D. Cal. 2023) .........................................................6

*BMW of N. Am., Inc. v. Gore*,
  517 U.S. 559 (1996) .....................................................................................17

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) .......................................................................................7

*Dawe v. Corr. USA*,
  506 F. App'x 657 (9th Cir. 2013) ................................................................15

*Eitel v. McCool*,
  782 F.2d 1470 (9th Cir. 1986) ...............................................5, 8, 11, 12, 13

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF NORTHERN LIGHT MEDICAL MANAGEMENT, LLC'S MOTION FOR ENTRY OF DEFAULT JUDGMENT

*Harman Int'l Indus., Inc v. Pro Sound Gear, Inc.*,
   No. 217CV06650ODWFFMX, 2018 WL 1989518 (C.D. Cal. Apr.
   24, 2018) ...............................................................................................................4, 5

*Janvrin Holdings Ltd. v. Hilsenrath*,
   No. C 02-1068 CW, 2007 WL 2155702 (N.D. Cal. July 26, 2007)....................16

*Kabatoff v. Safeco Ins. Co. of Am.*,
   627 F.2d 207 (9th Cir. 1980) ...............................................................................20

*Landstar Ranger, Inc. v. Parth Enters., Inc.*,
   725 F. Supp. 2d 916 (C.D. Cal. 2010).................................................8, 11, 12, 13

*Lovett v. Simm Assocs., Inc.*,
   No. EDCV 13-00116-VAP, 2013 WL 3242953 (C.D. Cal. June 25,
   2013) .....................................................................................................................13

*Oak Harbor Freight Lines, Inc. v. Sears Roebuck & Co.*,
   513 F.3d 949 (9th Cir. 2008) ...............................................................................15

*PepsiCo, Inc. v. California Sec. Cans*,
   238 F. Supp. 2d 1172 (C.D. Cal. 2002).......................................................8, 11, 13

*Philip Morris USA, Inc. v. Castworld Prods., Inc.*,
   219 F.R.D. 494 (C.D. Cal. 2003)..............................................................8, 12, 13

*Prof'l Seminar Consultants, Inc. v. Sino Am. Tech. Exch. Council, Inc.*,
   727 F.2d 1470 (9th Cir. 1984) ..............................................................................16

*S.E.C. v. Ross*,
   504 F.3d 1130 (9th Cir. 2007) ................................................................................6

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
   538 U.S. 408 (2003) .......................................................................................17, 18

*TeleVideo Sys., Inc. v. Heidenthal*,
   826 F.2d 915 (9th Cir. 1987) (per curiam) .........................................................5, 9

*In re Tuli*,
   172 F.3d 707 (9th Cir. 1999) ..................................................................................6

*United Nat'l Maint., Inc. v. San Diego Convention Ctr., Inc.*,
   766 F.3d 1002 (9th Cir. 2014).............................................................................10

176552.7
iv
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF NORTHERN LIGHT
MEDICAL MANAGEMENT, LLC'S MOTION FOR ENTRY OF DEFAULT JUDGMENT

*Vogel v. Harbor Plaza Ctr., LLC,*
    893 F.3d 1152 (9th Cir. 2018)................................................................21

*Wecosign, Inc. v. IFG Holdings, Inc.,*
    845 F. Supp. 2d 1072 (C.D. Cal. 2012)................................................12

**California Cases**

*Adams v. Murakami,*
    54 Cal. 3d 105 (1991)................................................................18, 20

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.,*
    7 Cal. 4th 503 (1994)................................................................10

*Asahi Kasei Pharma Corp. v. Actelion Ltd.,*
    222 Cal. App. 4th 945 (2013)................................................................10, 11

*Cnty. of San Bernardino v. Walsh,*
    158 Cal. App. 4th 533 (2007)................................................................18, 19

*Cummings Med. Corp. v. Occupational Med. Corp.,*
    10 Cal. App. 4th 1291 (1992)................................................................18, 19

*Fernandes v. Singh,*
    16 Cal. App. 5th 932 (2017)................................................................20

*Garcia v. Myllyla,*
    40 Cal. App. 5th 990 (2019)................................................................20

*Lewis Jorge Constr. Mgmt., Inc. v. Pomona Unified Sch. Dist.,*
    34 Cal. 4th 960 (2004)................................................................15

*Neal v. Farmers Ins. Exch.,*
    21 Cal. 3d 910 (1978)................................................................19

*Quelimane Co. v. Stewart Title Guar. Co.,*
    19 Cal. 4th 26 (1998)................................................................9

*Sole Energy Co. v. Petrominerals Corp.,*
    128 Cal. App. 4th 212 (2005)................................................................15

*Speirs v. BlueFire Ethanol Fuels, Inc.,*
    243 Cal. App. 4th 969 (2015)................................................................14

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF NORTHERN LIGHT MEDICAL MANAGEMENT, LLC'S MOTION FOR ENTRY OF DEFAULT JUDGMENT

*Tilkey v. Allstate Ins. Co.*,
    56 Cal. App. 5th 521 (2020) .................................................................................. 17

*Vallbona v. Springer*,
    43 Cal. App. 4th 1525 (1996) ............................................................................... 18

*Woods v. Fox Broad. Sub., Inc.*,
    129 Cal. App. 4th 344 (2005) .......................................................................... 10, 11

**Federal Statutes**

28 U.S.C.
    § 1332(a)(1) ............................................................................................................. 6
    § 1961 ..................................................................................................... 1, 14, 16, 21

50 U.S.C.
    § 3931 ....................................................................................................................... 5

**California Statutes**

Cal. Civ. Code
    § 1717(a) ................................................................................................................ 20
    § 3287(a) ................................................................................................................ 16
    § 3289(a) ................................................................................................................ 15
    § 3294 ......................................................................................................... 14, 16, 17
    § 3294(c)(1) ............................................................................................................ 16
    § 3333 ..................................................................................................................... 15

Cal. Civ. Proc. Code
    § 415.20(a) ........................................................................................................... 4, 7

**Federal Rules**

Fed. R. Civ. P.
    4(e)(1) .................................................................................................................. 4, 7
    4(e)(2)(B) ............................................................................................................. 4, 7
    4(h)(1)(A) ............................................................................................................ 4, 7
    4(h)(1)(B) ................................................................................................................ 7
    8(b)(6) ...................................................................................................................... 5
    54(c) .................................................................................................................. 13, 14
    54(d)(2) .................................................................................................................. 21
    55(a) ......................................................................................................................... 4
    55(b) ......................................................................................................................... 4
    55(b)(2) ................................................................................................................ 5, 7

176552.7

vi

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF NORTHERN LIGHT
MEDICAL MANAGEMENT, LLC'S MOTION FOR ENTRY OF DEFAULT JUDGMENT

**Local Rules**

C.D. Cal. R.

54-2 ........................................................................................................................21
54-7 ........................................................................................................................21
55-1 ...................................................................................................................4, 5, 7
55-2 ...............................................................................................................4, 5, 7, 14
55-3 ..................................................................................................................20, 21

**Other Authorities**

Gaab & Reese, *Cal. Practice Guide: Civ. Proc. Before Trial – Claims and Defenses* (2025)
¶ 3:34  .................................................................................................................10

Restatement (Second) of Torts
§ 774A cmt. e...........................................................................................................15

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiff Northern Light Medical Management, LLC ("NLMM") moves for entry of default judgment against Defendants American Healthcare Systems Corp., Inc. ("AHS"), Waukegan Illinois Hospital Company, LLC, d.b.a. Vista Medical Center East ("Vista," and together with AHS, the "AHS Parties"), and Mike Sarian, individually and as Trustee of the Sarian Family Trust ("Sarian").

This action arises from the AHS Parties' breach of a settlement agreement resolving prior litigation before this Court, under which the AHS Parties agreed to pay NLMM $675,000 in four installments. The AHS Parties paid the first installment, obtained dismissal of the prior action with prejudice, and defaulted on the remainder. Following notice and an uncured default, the unpaid balance of $300,000 accelerated under the settlement agreement's terms. Sarian—AHS's chief executive officer and, through the Sarian Family Trust, its majority owner—directed the AHS Parties' breach for his personal benefit.

Each Defendant was properly served, yet none answered or appeared, and the Clerk entered their defaults. (ECF Nos. 24, 27.) The admitted allegations of the Complaint establish the AHS Parties' liability for breach of contract and Sarian's liability for tortious interference. NLMM therefore seeks a default judgment awarding compensatory damages against all Defendants, jointly and severally; contractual interest and reasonable attorneys' fees against the AHS Parties; punitive damages against Sarian; and post-judgment interest under 28 U.S.C. § 1961.

### II.    FACTUAL AND PROCEDURAL BACKGROUND

#### A.    The Settlement Agreement.

In April 2025, NLMM sued the AHS Parties in this Court arising from a dispute under a master services agreement. *N. Light Med. Mgmt., LLC v. Am. Healthcare Sys. Corp., Inc.*, No. 2:25-cv-03643-MCS-BFMx (the "Prior Action"). (Compl. ¶ 16, ECF No. 1; Tiraturyan Decl. ¶ 2, Ex. 1; Rabinovich Decl. ¶¶ 4–5.) NLMM and the AHS

176552.7

1

Parties ultimately reached a binding settlement on the record before Magistrate Judge Mircheff on February 9, 2026, memorialized in the Confidential Settlement Agreement and Mutual Release effective February 27, 2026 (the "Settlement Agreement").[1] (Compl. ¶ 17, Ex. A, ECF No. 1-1; Tiraturyan Decl. ¶¶ 4–5, Ex. 2; Rabinovich Decl. ¶¶ 6–7.)

The Settlement Agreement required the AHS Parties to pay NLMM $675,000.00 in four installments: $375,000.00 by March 1, 2026,[2] and $100,000.00 by each of April 1, May 1, and June 1, 2026. (Agreement § 2.1.) If the AHS Parties failed to pay an installment and did not cure within ten calendar days of written notice, the entire unpaid balance would immediately accelerate and become due, with interest at ten percent per annum and NLMM's reasonable attorneys' fees and costs. (*Id.* § 2.4.)

### B.    The AHS Parties' Defaults Under the Settlement Agreement.

The AHS Parties defaulted immediately by missing the extended March 2 deadline for the first installment, and NLMM served a written notice of default that same day. (Compl. ¶ 20, Ex. B, ECF No. 1-2; Tiraturyan Decl. ¶¶ 7–8, Exs. 3–5.) Despite counsel's assurance on March 2 that payment was imminent, the AHS Parties waited until March 12 (the final day of the cure period) to request a one-day grace period, and made the payment the following day, March 13. (Compl. ¶ 21; Tiraturyan Decl. ¶¶ 8, 10, Ex. 3 at 5–9; Rabinovich Decl. ¶ 8.) In reliance on that payment and the AHS Parties' remaining obligations, NLMM performed its end of the bargain by stipulating to the dismissal of the Prior Action with prejudice on March 27, 2026. (Compl. ¶ 22; Tiraturyan Decl. ¶ 11, Exs. 6–7; Rabinovich Decl. ¶ 8.)

---

[1] A true and correct copy of the Settlement Agreement is attached as Exhibit 2 to the Declaration of David Tiraturyan and cited herein as "Agreement."

[2] Because March 1, 2026 fell on a Sunday, NLMM agreed, at the AHS Parties' request, to extend the deadline of the first installment to March 2. (Tiraturyan Decl. ¶ 7, Ex. 3 at 11.)

The AHS Parties defaulted again, failing to pay the second installment due April 1, 2026. (Compl. ¶ 23; Tiraturyan Decl. ¶ 12; Rabinovich Decl. ¶ 9.) NLMM served a written notice of default on April 2, and the ten-day cure period lapsed on April 12 without payment or any request for relief. (Compl. ¶¶ 23–24, Ex. C, ECF No. 1-3; Tiraturyan Decl. ¶¶ 13–15, Exs. 8–9.) Thus, on April 13, the unpaid balance of $300,000.00 accelerated and became immediately due under the Settlement Agreement. (Compl. ¶¶ 24–25; Agreement § 2.4.) To date, the AHS Parties have paid nothing toward the accelerated balance, which remains due in full together with contractual interest. (Tiraturyan Decl. ¶ 16; Rabinovich Decl. ¶ 9.)

## C.  Sarian's Interference.

Sarian is AHS's founder and CEO and, through the Sarian Family Trust, its 51% owner; AHS in turn owns 100% of Vista. (Compl. ¶¶ 6–7, 30.) The Sarian Family Trust also holds 100% of Healthcare Systems of America Corp. ("HSA") and 60% of NOR Healthcare Systems Corp. ("NOR"), two affiliated entities within Sarian's hospital enterprise. (*Id.* ¶ 30.) At all relevant times, Sarian exercised unilateral authority and control over the AHS Parties' finances and material decisions, including whether to pay the installments due under the Settlement Agreement. (Compl. ¶¶ 26, 28; *see* Tiraturyan Decl. ¶¶ 4, 28, Ex. 17.) Sarian knew of the Settlement Agreement and its terms because he attended the February 9, 2026 settlement conference as the AHS Parties' authorized representative, agreed to the terms on the record, and executed the agreement on their behalf. (Compl. ¶¶ 27, 45; Agreement at 9; Tiraturyan Decl. ¶¶ 4–5; Rabinovich Decl. ¶ 6.)

Although the AHS Parties had the ability to pay the second installment when it came due, Sarian directed them to withhold payment and disregard NLMM's notice of default. (Compl. ¶¶ 28, 46.) Three days before the Settlement Agreement's effective date, Sarian filed a declaration under penalty of perjury in litigation pending in Los Angeles Superior Court in which he testified that he formed HSA in September 2024 as a "vehicle to continue acquiring hospitals" outside AHS, that he "personally

guaranteed material acquisition debt" for AHS and its affiliated companies, and that he was funding a dispute over control of his enterprise, including the retention of premium litigation counsel and "24-hour personal security at an exorbitant cost." (Compl. ¶¶ 31–33; Tiraturyan Decl. ¶ 28, Ex. 17.) Because the Sarian Family Trust holds only 51% of AHS but all of HSA and 60% of NOR, every dollar retained within AHS and redirected to those entities—or applied to reduce the debt Sarian personally guaranteed—benefits Sarian at the AHS Parties' expense. (Compl. ¶¶ 30, 32, 34.)

### D.    This Lawsuit and Service of Process.

NLMM commenced this action on May 8, 2026. (ECF No. 1.) Vista was personally served through its registered agent, CT Corporation System, on May 28, 2026. (ECF No. 21; Tiraturyan Decl. ¶ 18, Ex. 10.) AHS was served by substituted service on May 27, 2026, by delivery of the summons and Complaint to the person apparently in charge of its Glendale office, followed by mailing, and service was deemed complete on June 6, 2026. Cal. Civ. Proc. Code § 415.20(a); Fed. R. Civ. P. 4(h)(1)(A), (e)(1); (ECF No. 19; Tiraturyan Decl. ¶ 19, Ex. 11.) Sarian was served on May 28, 2026, by delivery of the summons and Complaint to a person of suitable age and discretion residing at his Glendale dwelling, followed by mailing. Fed. R. Civ. P. 4(e)(2)(B); (ECF No. 20; Tiraturyan Decl. ¶ 20, Ex. 12.)

### E.    Defendants' Defaults.

No Defendant has responded to the Complaint or appeared in this action. (Tiraturyan Decl. ¶¶ 22–24.) On NLMM's applications, the Clerk entered Vista's default on June 29, 2026 and the defaults of AHS and Sarian on July 1, 2026. (*Id.* ¶ 25, Exs. 14–15; ECF Nos. 24, 27.)

## III.    LEGAL STANDARD

### A.    Procedural Requirements.

Federal Rule of Civil Procedure 55(b) "authorizes a district court to enter a default judgment after the Clerk enters a default under Rule 55(a)," provided the plaintiff also satisfies Local Rules 55-1 and 55-2. *Harman Int'l Indus., Inc v. Pro*

176552.7

4

*Sound Gear, Inc.*, No. 217CV06650ODWFFMX, 2018 WL 1989518, at *1 (C.D. Cal. Apr. 24, 2018).

In this District, a party seeking entry of default judgment must file a declaration establishing: "(1) when and against what party the default was entered; (2) the pleading to which the default was entered; (3) whether the defaulting party is an infant or incompetent person; (4) that the Servicemembers Civil Relief Act, 50 U.S.C. § 3931, does not apply; and (5) that the notice has been served on the defaulting party, if required under Rule 55(b)(2)." *Harman*, 2018 WL 1989518, at *1 (citing C.D. Cal. R. 55-1). Where a party seeks unliquidated damages on default judgment, "[n]otice must be given to the defaulting party of the amount requested," and evidence establishing the amount of unliquidated damages claimed may be submitted by declarations. C.D. Cal. R. 55-2.

**B.    Substantive Requirements.**

Upon satisfaction of the foregoing procedural requirements, "a district court has discretion whether to grant a default judgment." *Harman*, 2018 WL 1989518, at *2 (citing *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980)).

The Ninth Circuit has identified a list of factors district courts may consider when deciding whether to enter default judgment, including: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

"Upon entry of default, the defendant's liability generally is conclusively established, and the court accepts the well-pleaded factual allegations in the complaint as true." *Harman*, 2018 WL 1989518, at *2; *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (per curiam); *see also* Fed. R. Civ. P. 8(b)(6).

176552.7

5

## IV.   ARGUMENT

### A.   The Court Has Jurisdiction and NLMM Has Satisfied the Procedural Requirements.

"Before entering default judgment against a non-appearing party, district courts have an affirmative duty to consider subject matter jurisdiction, personal jurisdiction, and service." *Blumenthal Distrib., Inc. v. Comoch Inc.*, 652 F. Supp. 3d 1117, 1126 (C.D. Cal. 2023) (citing *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999)).

#### 1.   *Subject Matter Jurisdiction.*

NLMM is a Wyoming limited liability company with its principal place of business in Florida, its members are citizens of Florida and Tennessee, and no member is a citizen of California or Nevada. (Compl. ¶¶ 4, 13(a); Rabinovich Decl. ¶¶ 2–3.)[3] AHS, a Nevada corporation with its principal place of business in Glendale, California, is a citizen of Nevada and California; Vista, an Illinois limited liability company that is a wholly owned subsidiary of AHS, shares AHS's citizenship; and Sarian is a citizen of California, as is the Sarian Family Trust, which takes its trustee's citizenship. (Compl. ¶¶ 5–7, 13(b)–(d); *see* Tiraturyan Decl. ¶¶ 18–20.) The amount in controversy exceeds $75,000, exclusive of interest and costs, because the accelerated unpaid balance alone is $300,000. (Compl. ¶¶ 13, 42.) Accordingly, this Court has diversity jurisdiction under 28 U.S.C. § 1332(a)(1).

#### 2.   *Personal Jurisdiction.*

The AHS Parties reside and maintain their principal places of business in this District, and each consented in Section 14.2 of the Settlement Agreement to the jurisdiction of this Court for "[a]ny action or proceeding arising out of or relating to" the Settlement Agreement—which this action is. (Agreement § 14.2); *see S.E.C. v.*

---

[3] This Court discharged an order to show cause addressing NLMM's membership citizenship in the Prior Action. (Compl. ¶ 13(a) n.1; Tiraturyan Decl. ¶ 3.)

176552.7

6

*Ross*, 504 F.3d 1130, 1149 (9th Cir. 2007) (parties may consent to personal jurisdiction through a forum selection clause).

Sarian is a citizen of California domiciled in the city of Glendale, *i.e.*, within this District, and is therefore subject to general jurisdiction. (Compl. ¶¶ 7, 13(d), 14; *see* Tiraturyan Decl. ¶ 20); *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile"). Thus, the Court has personal jurisdiction over each Defendant.

### 3. Service of Process.

Each Defendant was also properly served, as detailed above. (*Supra* § II.D; ECF Nos. 19–21.) Vista was personally served through its registered agent under Rule 4(h)(1)(B). AHS was served by substituted service in compliance with California Code of Civil Procedure section 415.20(a), as permitted by Rules 4(h)(1)(A) and 4(e)(1), and service was deemed complete on June 6, 2026. Sarian was served by leaving the summons and Complaint with a person of suitable age and discretion at his dwelling, followed by mailing, in compliance with Rule 4(e)(2)(B). (Tiraturyan Decl. ¶¶ 18–20.)

### 4. Compliance with Local Rules 55-1 and 55-2.

The accompanying Declaration of David Tiraturyan establishes each element Local Rule 55-1 requires, including that (i) the Clerk entered Vista's default on June 29, 2026 and AHS's and Sarian's on July 1, 2026; (ii) default was entered on the Complaint; (iii) no Defendant is a minor or incompetent person; and (iv) the Servicemembers Civil Relief Act does not apply, as a certificate from the Act's Centralized Verification Service confirms for Sarian. (Tiraturyan Decl. ¶¶ 25–27, Exs. 14–16.) Although no Defendant has appeared and notice is therefore not required under Rule 55(b)(2), NLMM served this Motion and all supporting papers on each Defendant by mail, including notice of the amounts NLMM seeks through judgment. (Tiraturyan Decl. ¶ 44; *see also* Proof of Service filed concurrently herewith.)

176552.7

7

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF NORTHERN LIGHT MEDICAL MANAGEMENT, LLC'S MOTION FOR ENTRY OF DEFAULT JUDGMENT

**B.    The Court Should Enter Default Judgment.**

**1.    *NLMM Will Be Prejudiced Absent Entry of Judgment.***

Prejudice under the first *Eitel* factor turns on whether the plaintiff is left without a means of recovery if default judgment is denied. *See Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003). Here, NLMM released claims exceeding $1 million (Rabinovich Decl. ¶¶ 4–5) in exchange for the AHS Parties' promise to pay $675,000, was paid the first installment *after* serving a notice of default and extending an accommodation, and has received nothing since the second uncured default accelerated the balance. (*Supra* §§ II.A–B.) Defendants then declined to appear in this enforcement action at all. (*Supra* § II.E.) Denying judgment would leave NLMM holding a settlement it cannot enforce and a debt it has no remaining forum to collect, while Defendants profit from the Settlement Agreement's releases. *See, e.g.*, *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

**2.    *The Complaint States Meritorious Claims.***

"The second two *Eitel* factors 'require that a plaintiff state a claim on which the [plaintiff] may recover.'" *Philip Morris*, 219 F.R.D. at 499 (alterations in original) (quoting *PepsiCo*, 238 F. Supp. 2d at 1175). Because Defendants' defaults admit the Complaint's well-pleaded allegations, the question is whether those allegations establish each element of NLMM's claims. Here, they do.

**(a)    The AHS Parties Breached the Settlement Agreement.**

In California, "[t]he elements of a claim for breach of contract are: (1) the existence of a contract, (2) performance by the plaintiff, (3) breach by the defendant and (4) damage to plaintiff as a result of defendant's breach." *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010).

The Settlement Agreement is a valid written contract between NLMM and the AHS Parties, negotiated through counsel and executed by all parties. (Compl. ¶¶ 17, 38; *see generally* Agreement; *supra* § II.A.) NLMM performed by releasing its claims

176552.7                                        8

and forbearing from prosecuting the Prior Action, and—upon receiving the first installment—stipulating to its dismissal with prejudice. (Compl. ¶¶ 21–22, 39; *supra* § II.B.) The AHS Parties breached by failing to pay the second installment when due and subsequently failing to cure within the ten-day period after written notice, thus triggering acceleration of the entire unpaid balance under Section 2.4. (Compl. ¶¶ 23–25, Ex. C.) And NLMM has been damaged in the amount of the accelerated balance ($300,000), together with contractual interest. (Compl. ¶¶ 25, 42.) Because each element of NLMM's breach of contract claim is admitted (*TeleVideo*, 826 F.2d at 917–18), the claim is adequately pleaded.

### (b)    Sarian Tortiously Interfered with the Settlement Agreement.

A claim for intentional interference with contractual relations requires "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 55 (1998).

As established above, the Settlement Agreement is a valid contract between NLMM and the AHS Parties. (*Supra* § II.A; Compl. ¶¶ 17, 44; *see generally* Agreement.) Sarian knew of the Settlement Agreement and its payment terms, as the AHS Parties negotiated and executed it at his direction. (Compl. ¶¶ 26–27, 45.) Nonetheless, Sarian intentionally directed the AHS Parties to withhold the second installment and to disregard NLMM's notice of default, despite their ability to pay, and instead caused their funds to be diverted to himself and to affiliated entities under his control. (Compl. ¶¶ 28–30, 46–47; *supra* § II.C.) But for Sarian's direction, the AHS Parties would have paid the second installment when due or cured the default within the ten-day period. (Compl. ¶¶ 35, 48.) Consequently, NLMM was damaged in the amount of the unpaid accelerated balance, together with the further losses

9

addressed below. (Compl. ¶¶ 36, 49; *see also id.* ¶¶ 3, 42.) Each element is therefore adequately pleaded.

A claim for intentional interference lies only against a stranger to the contract. *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 513 (1994). Here, Sarian is not a party to the Settlement Agreement, which was entered into by NLMM, AHS, and Vista alone, and he signed solely in a representative capacity. (Compl. ¶¶ 27, 44–45; Agreement at 9.) His non-party status resolves the question, because *Applied Equipment* immunizes only the contracting parties themselves, and the Ninth Circuit has recognized that "California courts have repeatedly held that parties with an economic interest in a contractual relationship may be liable for intentional interference with that contract." *United Nat'l Maint., Inc. v. San Diego Convention Ctr., Inc.*, 766 F.3d 1002, 1008 (9th Cir. 2014).

Sarian's positions as AHS's chief executive officer and majority owner likewise confer no immunity. California law holds that the owners and officers of a contracting entity are not "automatically immune from liability for interfering with their corporation's contractual obligations." *Woods v. Fox Broad. Sub., Inc.*, 129 Cal. App. 4th 344, 353 (2005). Such insiders may be held liable in tort where they induce the entity's breach to advance their individual interests rather than those of the entity. *Id.* at 356–57; *Asahi Kasei Pharma Corp. v. Actelion Ltd.*, 222 Cal. App. 4th 945, 962–65 (2013); *see* Gaab & Reese, *Cal. Practice Guide: Civ. Proc. Before Trial – Claims and Defenses* ¶ 3:34 (2025).

Here, performance served the AHS Parties because it resolved the claims against them at a substantial discount on terms Sarian had authorized them to accept, while a breach exposed the AHS Parties to acceleration of the entire unpaid balance of the Settlement Agreement, ten percent contractual interest, and liability for NLMM's attorneys' fees and costs. (Compl. ¶¶ 2, 26–27, 29; Agreement §§ 2.4, 12; *supra* § II.A.) Sarian nonetheless directed the breach and the diversion described above. (Compl. ¶¶ 28–30, 32, 46; *supra* § II.C.) On these admitted facts, Sarian

176552.7

10

induced the AHS Parties' breach to advance his own interests at their expense; he is therefore liable for intentional interference *notwithstanding* his corporate positions. *Woods*, 129 Cal. App. 4th at 356–57; *Asahi*, 222 Cal. App. 4th at 962–65.

Accordingly, the Complaint states a claim against Sarian for intentional interference with contractual relations, and the second and third *Eitel* factors support entry of default judgment on NLMM's Second Claim for Relief.

### 3. The Sum at Stake Is Proportionate to Defendants' Conduct.

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176. Here, every component of the judgment NLMM seeks is fixed by the Settlement Agreement, by statute, or by the record. The $300,000.00 compensatory award is the unpaid balance of the amount the AHS Parties agreed in writing to pay, accelerated under Section 2.4 of the Settlement Agreement. (Agreement § 2.4(a).) The interest sought is the contractual ten percent rate, running from the acceleration date. (*Id.* § 2.4(b).) The punitive damages sought against Sarian are less than the compensatory award and are calibrated to the settlement discount NLMM extended in reliance on the promise Sarian caused the AHS Parties to break. (*Infra* § IV.C.4.) The attorneys' fees NLMM seeks against the AHS Parties are those NLMM has actually incurred, net of time written off in the exercise of billing judgment as duplicative or unnecessary, and are recoverable under Sections 2.4(c) and 12 of the Settlement Agreement. (*Infra* § IV.C.5; Tiraturyan Decl. ¶¶ 39, 41.) Because NLMM seeks nothing beyond what the Settlement Agreement and Defendants' admitted misconduct support, this factor favors default judgment.

### 4. No Material Facts Are in Dispute.

"The fifth *Eitel* factor considers the possibility that material facts may be in dispute." *Landstar*, 725 F. Supp. 2d at 921. Because the Court accepts the Complaint's well-pleaded allegations as true upon default, "the likelihood that any genuine issue

11

may exist is, at best, remote," where, as here, a plaintiff has pleaded the facts necessary to prevail. *Philip Morris*, 219 F.R.D. at 500.

Here, the prospect of a genuine dispute is even more remote. The AHS Parties' payment obligations are fixed in a written agreement they negotiated with counsel and executed following a settlement conference, and their partial payment confirms the agreement's validity. (*See* Rabinovich Decl. ¶¶ 6–8.)

The facts establishing Sarian's interference are equally beyond genuine dispute, both because his default admits them and because the facts supplying his personal financial motive derive from his sworn testimony. In February 2026, Sarian declared under penalty of perjury in related state-court litigation that he, *inter alia*, formed HSA as a "vehicle to continue acquiring hospitals" outside AHS and that he "personally guaranteed material acquisition debt" for his enterprise. (Compl. ¶¶ 31– 32; *supra* § II.C.) Sarian cannot genuinely dispute facts to which he has himself testified under oath. This factor accordingly favors entry of default judgment.

### 5. Defendants' Default Was Not the Product of Excusable Neglect.

"The sixth *Eitel* factor considers whether defendant's default may have been the product of excusable neglect." *Landstar*, 725 F. Supp. 2d at 922. "This factor favors default judgment when the defendant has been properly served or the plaintiff demonstrates that the defendant is aware of the lawsuit." *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012).

Here, Defendants' defaults were a deliberate choice, not excusable neglect. Each Defendant was properly served and thereafter received this Motion and its supporting documents by mail. (*Supra* §§ II.D–E; Tiraturyan Decl. ¶¶ 18–20, 44.) Their counsel corresponded with NLMM's counsel both before and after this action was filed. (Tiraturyan Decl. ¶¶ 7–10, 21, Exs. 3, 13.) Defendants are sophisticated parties who negotiated a settlement with counsel, were warned that enforcement litigation would follow nonpayment (*id.* ¶¶ 9–10, 14, Exs. 5, 9), and now have

176552.7

12

consciously declined to respond to that litigation after being properly served. *See, e.g.*, *Adobe Sys. Inc. v. Kern*, No. C 09-1076 CW JL, 2009 WL 5218005, at *6 (N.D. Cal. Nov. 24, 2009) ("Defendant has had ample time to try to resolve this matter but has elected not to appear…. Defendant's voluntary decision to allow default to be entered contradicts any argument for excusable neglect." (internal citations omitted)). Accordingly, this *Eitel* factor favors entry of default judgment.

### 6. *The Policy Favoring Decisions on the Merits Does Not Preclude Judgment.*

The general rule is that "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. That preference, however, "standing alone, is not dispositive," and a defendant's failure to answer "makes a decision on the merits impractical, if not impossible." *PepsiCo*, 238 F. Supp. 2d at 1177; *see Landstar*, 725 F. Supp. 2d at 922.

Here, because Defendants have failed to appear or offer any defense, the policy favoring merits decisions does not preclude entry of default judgment.

### C. **NLMM Is Entitled to the Relief Requested.**

A plaintiff seeking default judgment is "required to prove all damages sought in the complaint"; however, this "burden [of] 'proving up' damages is relatively lenient." *Philip Morris*, 219 F.R.D. at 498. Such damages may be proven "through testimony or written declaration or affidavit." *Lovett v. Simm Assocs., Inc.*, No. EDCV 13-00116-VAP, 2013 WL 3242953, at *3 (C.D. Cal. June 25, 2013).

### 1. *The Relief Sought Conforms to the Complaint's Prayer.*

"A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Although Rule 54(c) ensures that a defaulting defendant had notice of the relief at stake when it elected not to defend, it does not require the complaint to plead a specific sum. The Ninth Circuit has held that "Rule 54(c) does not prohibit awarding actual damages in a default judgment to a party that sought in its pleadings actual damages in an amount to be determined at

176552.7

13

trial." *AirDoctor, LLC v. Xiamen Qichuang Trade Co.*, 134 F.4th 552, 553 (9th Cir. 2025).

Here, the $300,000.00 in compensatory damages NLMM seeks through judgment equals the floor prayed on the First Claim and falls within the Second Claim's prayer for compensatory damages according to proof. (Compl., Prayer ¶¶ 1, 4.) The contractual interest NLMM seeks tracks the Prayer's terms at ten percent per annum from April 13, 2026 pursuant to Section 2.4(b) of the Settlement Agreement. (*Id.* ¶ 3.) The punitive damages of $265,358.28 NLMM seeks against Sarian fall within the Second Claim's prayer for punitive and exemplary damages "according to proof" under California Civil Code section 3294, and NLMM has served notice of that specific amount on Sarian as Local Rule 55-2 requires. (*Id.* ¶ 5; *supra* § IV.A.4.) NLMM also prayed for attorneys' fees and costs under Sections 2.4(c) and 12 of the Settlement Agreement, and further prayed for post-judgment interest under 28 U.S.C. § 1961 "in all events." (*Id.* ¶¶ 6–7.) Rule 54(c) therefore poses no obstacle to the judgment NLMM seeks.

### 2. *Compensatory Damages.*

"Damages for breach of contract include general (or direct) damages, which compensate for the value of the promised performance…." *Ameris Bank v. Key Carrier Grp., Co.*, No. 8:23-CV-02430-FWS-KES, 2024 WL 3740093, at *6 (C.D. Cal. June 28, 2024) (quoting *Speirs v. BlueFire Ethanol Fuels, Inc.*, 243 Cal. App. 4th 969, 989 (2015)). Where, as here, an agreement accelerates the unpaid balance upon an uncured default, the accelerated balance is recoverable as direct damages. *See id.* at *6–7 (awarding the accelerated remaining balance of an installment agreement on default judgment).

The Settlement Agreement obligated the AHS Parties to pay $675,000.00. (Agreement § 2.1.) The AHS Parties paid $375,000.00 on March 13, 2026, and have paid nothing since. (Tiraturyan Decl. ¶¶ 10, 16, Ex. 3; Rabinovich Decl. ¶¶ 8–9.) Upon their failure to cure the second default, the remaining $300,000.00 accelerated and

became immediately due under Section 2.4(a). (Agreement § 2.4(a); *supra* § II.B.) Therefore, an award of $300,000.00 places NLMM where the AHS Parties' full performance would have. *See Lewis Jorge Constr. Mgmt., Inc. v. Pomona Unified Sch. Dist.*, 34 Cal. 4th 960, 967 (2004) ("The goal is to put the plaintiff 'in as good a position as he or she would have occupied' if the defendant had not breached the contract.").

Moreover, the measure of damages for tortious interference is "the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not." Cal. Civ. Code § 3333; *Sole Energy Co. v. Petrominerals Corp.*, 128 Cal. App. 4th 212, 232 (2005). Sarian is therefore jointly and severally liable for the same $300,000.00 on the Second Claim—the injury his interference caused being the AHS Parties' nonpayment. (Compl. ¶¶ 48–49; *supra* § IV.B.2(b)); *see Dawe v. Corr. USA*, 506 F. App'x 657, 659 (9th Cir. 2013) ("The [tortious interference] defendant and the contract breaker are both wrongdoers ... and each is liable for the entire loss that he has caused." (alterations in original) (quoting Restatement (Second) of Torts § 774A cmt. e (1979))).

Accordingly, the Court should award NLMM compensatory damages of $300,000.00 against all Defendants, jointly and severally, subject to a single satisfaction.

### 3.    *Interest.*

"State law generally governs awards of prejudgment interest in diversity actions[.]" *Oak Harbor Freight Lines, Inc. v. Sears Roebuck & Co.*, 513 F.3d 949, 961 (9th Cir. 2008). In California, "[a]ny legal rate of interest stipulated by a contract remains chargeable after a breach thereof, as before, until the contract is superseded by a verdict or other new obligation." Cal. Civ. Code § 3289(a).

Section 2.4(b) of the Settlement Agreement provides that, upon an uncured default, the unpaid balance bears interest at ten percent per annum beginning on the first day following expiration of the ten-day cure period until paid in full. (Agreement

176552.7

15

§ 2.4(b).) The balance of $300,000.00 accelerated on April 13, 2026, following the AHS Parties' failure to cure. (*Supra* § II.B.) The Court should therefore award NLMM contractual interest against the AHS Parties of $7,808.05, computed from April 13, 2026 through July 16, 2026, the date of the filing of this Motion, and accruing thereafter at $82.19 per day until entry of judgment. (Tiraturyan Decl. ¶ 34.) Alternatively, the Court should award NLMM prejudgment interest pursuant to Civil Code section 3287(a). (Compl., Prayer ¶ 7.)

"Under the provisions of 28 U.S.C. § 1961, postjudgment interest on a district court judgment is mandatory." *Air Separation, Inc. v. Underwriters at Lloyd's of London*, 45 F.3d 288, 290 (9th Cir. 1995). NLMM prayed for this relief in all events, and the judgment should provide for post-judgment interest on the entire award, against all Defendants, at the rate section 1961 prescribes from entry until satisfaction. (Compl., Prayer ¶ 7.)

### 4.    Punitive Damages Against Sarian.

"Punitive damages may be awarded as part of a default judgment award." *Janvrin Holdings Ltd. v. Hilsenrath*, No. C 02-1068 CW, 2007 WL 2155702, at *3 n.13 (N.D. Cal. July 26, 2007) (citing *Bennett v. Am. Med. Response, Inc.*, 226 F. App'x 725 (9th Cir. 2007)). Punitive damages are available where a defendant "has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294. To determine the amount of punitive damages awarded, courts consider "(1) the nature of the defendants' acts; (2) the amount of compensatory damages awarded; and (3) the wealth of the defendants." *Prof'l Seminar Consultants, Inc. v. Sino Am. Tech. Exch. Council, Inc.*, 727 F.2d 1470, 1473 (9th Cir. 1984).

Malice under section 3294 includes "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights … of others." Cal. Civ. Code § 3294(c)(1). Here, the Complaint alleges, and Sarian's default admits, that Sarian deliberately directed the AHS Parties to breach a binding settlement

agreement, with willful and conscious disregard of NLMM's rights, to advance his personal interests at NLMM's expense. (Compl. ¶ 50.) Those admitted allegations establish NLMM's entitlement to punitive damages under Civil Code section 3294. Nonetheless, each of the three factors governing the amount of the award supports the $265,358.28 NLMM requests.

### (a)    Nature of the Acts.

Sarian personally negotiated the Settlement Agreement resolving the Prior Action, in which NLMM sued on invoiced amounts of $940,358.28, plus additional amounts subject to an accounting. (Tiraturyan Decl. ¶¶ 2, 4, Ex. 1; Rabinovich Decl. ¶ 4.) Sarian appeared at the February 9, 2026 settlement conference as the AHS Parties' authorized representative, agreed on the record to pay $675,000.00 for a release of NLMM's claims, and executed the Settlement Agreement on their behalf. (Compl. ¶ 27; Rabinovich Decl. ¶ 6; *supra* § II.C.) At Sarian's direction, the AHS Parties paid the first installment only after defaulting, secured dismissal of the Prior Action with prejudice on March 27, and then defaulted on the second installment five days later—retaining their cash for Sarian's enterprise rather than the creditor whose release they had just secured. (Compl. ¶¶ 28–34, 46; *supra* §§ II.B–C.) This conduct occupies the aggravated end of economic misconduct under the reprehensibility guideposts, because the harm resulted from "intentional malice, trickery, or deceit" rather than "mere accident," and because it was repeated in that Sarian directed the AHS Parties to default *twice* under the Settlement Agreement, after their sustained nonpayment that had prompted the Prior Action in the first place. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003).

### (b)    Relationship to the Compensatory Award.

"Punitive damages must bear a 'reasonable relationship' to compensatory damages." *Tilkey v. Allstate Ins. Co.*, 56 Cal. App. 5th 521, 561 (2020) (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 580–81 (1996)). Here, the $265,358.28 in punitive damages that NLMM seeks is less than the $300,000.00 compensatory

award, a ratio of 0.88 to 1, *i.e.*, below the one-to-one ratio courts treat as the outer limit where compensatory damages are substantial. *State Farm*, 538 U.S. at 425; *see Akkelian v. Nourian*, No. CV 17-1446 PSG (EX), 2019 WL 13040904, at *6–7 (C.D. Cal. Feb. 4, 2019) (awarding punitive damages equal to the $500,000 compensatory award on default judgment). It also tracks the record, equaling the discount NLMM extended for the payment promise Sarian caused the AHS Parties to break—a benefit Sarian and the AHS Parties would retain even after the compensatory award is satisfied. (Rabinovich Decl. ¶¶ 4, 7.) A punitive award may properly be measured by the gain a defendant realized from the misconduct, and an award calibrated to that gain does not exceed the level necessary to punish and deter. *See Cummings Med. Corp. v. Occupational Med. Corp.*, 10 Cal. App. 4th 1291, 1299 (1992) ("The defendant's profits from misconduct are objectively based and uniquely appropriate as the basis for punitive damages."). Thus, the amount of punitive damages NLMM seeks is reasonably related to its compensatory damages.

### (c)    Financial Condition.

California law requires "meaningful evidence of the defendant's financial condition" before an award of punitive damages. *Adams v. Murakami*, 54 Cal. 3d 105, 109 (1991). Although net worth is considered, the relevant inquiry is "whether the amount of damages exceeds the level necessary to properly punish and deter." *Cummings*, 10 Cal. App. 4th at 1299 (internal quotation marks omitted) (quoting *Adams*, 54 Cal. 3d at 110); *see Cnty. of San Bernardino v. Walsh*, 158 Cal. App. 4th 533, 546 (2007) (explaining that net worth is a common measure but "there is no rigid formula" and "other factors may be dispositive especially when net worth is manipulated and fails to reflect actual wealth"). A defendant's own statements concerning his finances may carry the plaintiff's burden on this element. *See Vallbona v. Springer*, 43 Cal. App. 4th 1525, 1536–41 (1996) (affirming $200,000 punitive award where $866,000 net worth was established through defendant's admissions).

176552.7

18

Here, Sarian's public statements and sworn testimony establish his financial condition. On May 11, 2026, weeks after the accelerated balance came due and three days after NLMM commenced this action, Sarian published a public Facebook post describing himself as "one of the top healthcare CEOs" in the country and "the biggest philanthropist in our community," stating that he has given "many millions in charity donations" and that he "earned every penny of [his] net worth with hard work and lifetime dedication." (Tiraturyan Decl. ¶¶ 29, 31, Ex. 18.) That post echoes Sarian's earlier public claims of eight-figure charitable giving, including $20 million in medical equipment donated to hospitals in Armenia. (*Id.* ¶¶ 32–33, Exs. 19–20.) His sworn testimony corroborates those statements, as Sarian declared that he holds his hospital enterprise through the Sarian Family Trust, comprising 51% of AHS, 100% of HSA, and 60% of NOR. (Compl. ¶¶ 30–33; *supra* § II.C; Tiraturyan Decl. ¶ 28, Ex. 17.) Wealth held through a family trust and layered affiliates is therefore a circumstance in which net worth alone "fails to reflect actual wealth," and Sarian's statements supply the measure directly. *Walsh*, 158 Cal. App. 4th at 546.[4]

The admitted allegations independently establish Sarian's gain from the interference because every dollar the AHS Parties withheld at his direction reduced his exposure under his personal guarantees and remained available for redirection to other entities within his hospital enterprise, where he captures the entire upside. (Compl. ¶¶ 28–30, 32; *supra* § II.C.) Such profits are themselves sufficient evidence of financial condition. *Cummings*, 10 Cal. App. 4th at 1298–1301.

---

[4] Sarian's public posts also depict his lavish lifestyle. In September 2025, Sarian posted photographs of private jet travel and luxury hotel stays in Miami Beach, and on June 2, 2026, with the accelerated balance unpaid and this action pending, he posted photographs from a black-tie event. (Tiraturyan Decl. ¶ 30.) A defendant who sustains that spending will not be destroyed by the requested award. *See Neal v. Farmers Ins. Exch.*, 21 Cal. 3d 910, 928 (1978) ("[T]he function of deterrence … will not be served if the wealth of the defendant allows him to absorb the award with little or no discomfort.").

176552.7

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF NORTHERN LIGHT MEDICAL MANAGEMENT, LLC'S MOTION FOR ENTRY OF DEFAULT JUDGMENT

Sarian's default has also denied NLMM any discovery into his finances beyond those statements. A defendant is in the best position to know his own financial condition and may not defeat a punitive award by preventing its proof. *Fernandes v. Singh*, 16 Cal. App. 5th 932, 942 (2017); *Garcia v. Myllyla*, 40 Cal. App. 5th 990, 995–96 (2019). On this record, the requested award of $265,358.28 is less than the compensatory award, less than the benefit Sarian retained through the interference, and modest relative to the means Sarian himself describes; it therefore punishes and deters without the risk of financially "destroy[ing]" him. *Adams*, 54 Cal. 3d at 112 ("The purpose [of punitive damages] is to deter, not to destroy."). Accordingly, the Court should award NLMM punitive damages of $265,358.28 against Sarian, individually and as Trustee of the Sarian Family Trust.

### 5.    *Reasonable Attorneys' Fees and Costs.*

"In a diversity action, the question of attorney's fees is governed by state law." *Kabatoff v. Safeco Ins. Co. of Am.*, 627 F.2d 207, 210 (9th Cir. 1980). In California, a "prevailing party" in an action on a contract is entitled to recover reasonable attorneys' fees and costs where the contract so provides. Cal. Civ. Code § 1717(a).

Section 2.4(c) of the Settlement Agreement makes NLMM's reasonable attorneys' fees and costs part of the amounts due upon an uncured default, and Section 12 entitles the prevailing party in any action arising out of the Settlement Agreement to recover its fees and costs. (Agreement §§ 2.4(c), 12.) NLMM prayed for those fees and costs in the Complaint (Compl., Prayer ¶ 6), and it prevails on its breach of contract claim through this judgment. NLMM's entitlement to its reasonable fees against the AHS Parties is therefore established.

Local Rule 55-3 provides a schedule of fees for default judgments where a contract allows fee recovery, but it permits a party claiming fees in excess of the schedule to request that the Court fix the fee. *See* C.D. Cal. R. 55-3. Because NLMM's reasonable fees exceed the amount the schedule would produce, NLMM makes that written request through this Motion and the concurrently filed Notice and Request for

176552.7

20

Attorneys' Fees in Excess of the Local Rule 55-3 Schedule. On such a request, the Court calculates a reasonable fee under the lodestar method rather than the schedule. *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1159 (9th Cir. 2018).

Through July 16, 2026, NLMM has incurred $43,351.00 in attorneys' fees prosecuting this action, reflecting 76.6 hours of work at hourly rates of $450 to $1,035. (Tiraturyan Decl. ¶¶ 36–42, Exs. 21–22.) The rates are consistent with those charged by comparable firms in this District for similar work, and the hours were reasonably incurred on the tasks summarized in the accompanying schedules. (*Id.*) NLMM has served notice of the amount claimed on each Defendant with this Motion. (Tiraturyan Decl. ¶ 44.) Separately, NLMM will submit its costs to the Clerk pursuant to Local Rule 54-2. To the extent the Court prefers to determine the amount of fees separately from this Motion, NLMM requests that the judgment award NLMM its reasonable attorneys' fees in an amount to be fixed by the Court on post-judgment motion, which NLMM will file within fourteen days after entry of judgment. C.D. Cal. R. 54-7; Fed. R. Civ. P. 54(d)(2).

## V.    CONCLUSION

For the foregoing reasons, NLMM respectfully requests that the Court grant this Motion and enter judgment awarding NLMM (i) compensatory damages of $300,000.00 against all Defendants, jointly and severally, subject to a single satisfaction; (ii) contractual interest against the AHS Parties of $7,808.05, jointly and severally, computed from April 13, 2026 through July 16, 2026, and accruing thereafter at $82.19 per day until entry of judgment; (iii) punitive damages of $265,358.28 against Sarian; (iv) reasonable attorneys' fees of $43,351.00 against the AHS Parties, jointly and severally; and (v) post-judgment interest under 28 U.S.C. § 1961 against all Defendants.

DATED: July 16, 2026                    Respectfully submitted,

                                        FROST LLP


                                        By: _____
                                            CHRISTOPHER FROST
                                            BENJAMIN KASSIS
                                            DAVID TIRATURYAN
                                            Attorneys for Plaintiff
                                            NORTHERN LIGHT MEDICAL
                                            MANAGEMENT, LLC

# <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel of record for Northern Light Medical Management, LLC certifies that this brief contains 6,973 words, which complies with the word limit of L.R. 11-6.1.

DATED: July 15, 2026                    FROST LLP


By:      /s/ David Tiraturyan

DAVID TIRATURYAN
Attorneys for Plaintiff
NORTHERN LIGHT MEDICAL
MANAGEMENT, LLC