CHRISTOPHER FROST (SBN 200336)
chris@frostllp.com
BENJAMIN KASSIS (SBN 298844)
ben@frostllp.com
DAVID TIRATURYAN (SBN 350995)
david1@frostllp.com
FROST LLP
10960 Wilshire Boulevard, Suite 2100
Los Angeles, California 90024
Telephone: (424) 254-0441
Facsimile: (424) 600-8504

Attorneys for Plaintiff
NORTHERN LIGHT MEDICAL
MANAGEMENT, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| NORTHERN LIGHT MEDICAL MANAGEMENT, LLC, <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN HEALTHCARE SYSTEMS CORP., INC.; WAUKEGAN ILLINOIS HOSPITAL COMPANY, LLC, d.b.a. VISTA MEDICAL CENTER EAST; MIKE SARIAN, individually and as Trustee of the SARIAN FAMILY TRUST; and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No. 2:26-cv-04980-MCS-BFMx <br><br> *Assigned to: Hon. Mark C. Scarsi* <br><br> **COMBINED RESPONSE TO DEFENDANTS' REQUEST TO SET ASIDE DEFAULTS AND REPLY IN SUPPORT OF PLAINTIFF NORTHERN LIGHT MEDICAL MANAGEMENT, LLC'S MOTION FOR ENTRY OF DEFAULT JUDGMENT** <br><br> Action Filed:   May 8, 2026 |

188624.1

# **TABLE OF CONTENTS**

I.   DEFENDANTS' REQUEST TO SET ASIDE THE DEFAULTS IS PROCEDURALLY IMPROPER. ...........................................................................1

II.  DEFENDANTS' IMPROPER REQUEST TO SET ASIDE THE DEFAULTS SHOULD BE DENIED. ....................................................................2

    A.  Defendants Bear the Burden of Establishing Good Cause. ..........................2

    B.  Setting Aside the Defaults Would Prejudice NLMM. ..................................3

    C.  Defendants Do Not Identify Any Meritorious Defense, Which Alone Warrants Denying Relief..................................................................................4

    D.  Defendants' Failure to Respond Was Culpable. ..........................................6

    E.  Defendants Were Properly Served. ..............................................................8

        1.   Sarian.............................................................................................8

        2.   AHS.................................................................................................9

        3.   Vista .............................................................................................11

III.  THE *EITEL* FACTORS SUPPORT ENTRY OF DEFAULT JUDGMENT.....11

    A.  Defendants Do Not Contest Most of the *Eitel* Factors. .............................12

    B.  NLMM Would Be Prejudiced Absent Default Judgment..........................12

    C.  Defendants' Default Was Not the Product of Excusable Neglect. .............13

    D.  The Policy Favoring Decisions on the Merits Does Not Preclude Judgment. ...................................................................................................14

IV. ANY RELIEF FROM THE DEFAULTS SHOULD BE CONDITIONED ON JUST TERMS................................................................................................14

V.  CONCLUSION.............................................................................................15

COMBINED RESPONSE TO DEFENDANTS' REQUEST TO SET ASIDE DEFAULTS AND REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Federal Cases**

*Am. Ass'n of Naturopathic Physicians v. Hayhurst*,
    227 F.3d 1104 (9th Cir. 2000) .................................................................................3

*Barcamerica Int'l USA Tr. v. Tyfield Importers, Inc.*,
    289 F.3d 589 (9th Cir. 2002) ..................................................................................10

*Brandt v. Am. Bankers Ins. Co. of Fla.*,
    653 F.3d 1108 (9th Cir. 2011) ...........................................................................3, 15

*Burda Media, Inc. v. Viertel*,
    417 F.3d 292 (2d Cir. 2005) ....................................................................................8

*craigslist, Inc. v. Hubert*,
    278 F.R.D. 510 (N.D. Cal. 2011) .......................................................................8, 9

*Darbeevision, Inc. v. C&A Mktg., Inc.*,
    No. SACV1800725AGSSX, 2018 WL 5877280 (C.D. Cal. June 11,
    2018) ........................................................................................................................1

*Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*,
    840 F.2d 685 (9th Cir. 1988) ..................................................................................6

*Duran v. City of Porterville*,
    No. 1:12-CV-01239-LJO, 2013 WL 178189 (E.D. Cal. Jan. 16,
    2013) ......................................................................................................................10

*Eitel v. McCool*,
    782 F.2d 1470 (9th Cir. 1986) ...........................................................11, 12, 13, 14

*Falk v. Allen*,
    739 F.2d 461 (9th Cir. 1984) (per curiam) .............................................................3

*Franchise Holding II, LLC v. Huntington Restaurants Grp., Inc.*,
    375 F.3d 922 (9th Cir. 2004) ...........................................................................3, 4, 6

*Gen. Elec. Cap. Corp. v. Master Kraft Machining Inc.*,
    No. C-11-03238 CW EDL, 2011 WL 6101023 (N.D. Cal. Oct. 12,
    2011) ......................................................................................................................13

COMBINED RESPONSE TO DEFENDANTS' REQUEST TO SET ASIDE DEFAULTS AND REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT

*Hawaii Carpenters' Tr. Funds v. Stone*,
   794 F.2d 508 (9th Cir. 1986) .................................................................................5, 6

*Herbalife Int'l of Am., Inc. v. Healthy1 Inc.*,
   830 F. App'x 801 (9th Cir. 2020) ...............................................................................9

*Hill St. Health Servs. LLC v. Cnty. of Los Angeles*,
   No. CV1602486BROAFMX, 2016 WL 9453998 (C.D. Cal. Nov.
   16, 2016) ...................................................................................................................12

*KT AMC Co. v. LWC Cap., LLC*,
   No. 217CV04289ODWPLA, 2017 WL 7171719 (C.D. Cal. Nov. 6,
   2017) ...........................................................................................................................1

*Link v. Wabash R. Co.*,
   370 U.S. 626 (1962) ....................................................................................................7

*Madsen v. Bumb*,
   419 F.2d 4 (9th Cir. 1969) ..........................................................................................4

*Mahon v. Credit Bureau of Placer Cnty. Inc.*,
   171 F.3d 1197 (9th Cir. 1999) ....................................................................................9

*Myer v. Nitetrain Coach Co.*,
   459 F. Supp. 2d 1074 (W.D. Wash. 2006) ................................................................11

*Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana
   Hydrolec*,
   854 F.2d 1538 (9th Cir. 1988) ..............................................................................14, 15

*PepsiCo, Inc. v. California Sec. Cans*,
   238 F. Supp. 2d 1172 (C.D. Cal. 2002) .................................................................13, 14

*R & A Synergy LLC v. Walmart, Inc.*,
   No. CV1902587ABGJSX, 2019 WL 8137728 (C.D. Cal. Oct. 23,
   2019) ...........................................................................................................................5

*Ramirez v. Ghilotti Bros. Inc.*,
   941 F. Supp. 2d 1197 (N.D. Cal. 2013) .....................................................................12

*Real v. St. Jude Med., Inc.*,
   No. 2:16-CV-09632-ODW-AS, 2017 WL 1173903 (C.D. Cal. Mar.
   29, 2017) ...................................................................................................................11

COMBINED RESPONSE TO DEFENDANTS' REQUEST TO SET ASIDE DEFAULTS AND REPLY IN
SUPPORT OF PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT

*S.E.C. v. Internet Sols. for Bus. Inc.*,
   509 F.3d 1161 (9th Cir. 2007) .......................................................................... 8, 10

*Schikore v. BankAmerica Supplemental Ret. Plan*,
   269 F.3d 956 (9th Cir. 2001) .................................................................................. 9

*TCI Grp. Life Ins. Plan v. Knoebber*,
   244 F.3d 691 (9th Cir. 2001), *overruled on other grounds by*
   *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141 (2001) ............................ 3, 4, 7

*TeleVideo Sys., Inc. v. Heidenthal*,
   826 F.2d 915 (9th Cir. 1987) .................................................................................. 5

*TriPharma, LLC v. First Fruits Bus. Ministry*,
   No. SACV12404JVSANX, 2013 WL 12129386 (C.D. Cal. Apr. 2,
   2013) ...................................................................................................................... 6

*United States v. Aguilar*,
   782 F.3d 1101 (9th Cir. 2015) ................................................................................ 4

*United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*,
   615 F.3d 1085 (9th Cir. 2010) ....................................................................... 3, 6, 7

*Wecosign, Inc. v. IFG Holdings, Inc.*,
   845 F. Supp. 2d 1072 (C.D. Cal. 2012) ................................................................ 13

*Zamani v. Carnes*,
   491 F.3d 990 (9th Cir. 2007) .................................................................................. 5

*Zurich Am. Ins. Co. v. Sealink Ins. Serv. Corp.*,
   752 F. App'x 406 (9th Cir. 2018) ........................................................................... 6

**California Cases**

*Bein v. Brechtel-Jochim Grp., Inc.*,
   6 Cal. App. 4th 1387 (1992) ................................................................................. 10

*Pasadena Medi-Ctr. Assocs. v. Superior Ct.*,
   9 Cal. 3d 773 (1973) ............................................................................................ 10

**California Statutes**

Cal. Civ. Proc. Code
   § 415.20(a) ........................................................................................................... 10
   § 415.20(b) ............................................................................................................. 8

188624.1                                        iv

COMBINED RESPONSE TO DEFENDANTS' REQUEST TO SET ASIDE DEFAULTS AND REPLY IN
SUPPORT OF PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT

Cal. Evid. Code
 § 647 ..................................................................................................... 10

**Federal Rules**

Fed. R. Civ. P. 4(e) ..................................................................................... 8

Fed. R. Civ. P. 4(e)(2)(B) ........................................................................... 8

Fed. R. Civ. P. 4(h) ................................................................................... 11

Fed. R. Civ. P. 4(h)(1)(B) .......................................................................... 11

Fed. R. Civ. P. 7(b)(1) ................................................................................. 1

Fed. R. Civ. P. 8(b)(6) ................................................................................. 5

Fed. R. Civ. P. 55(c) ............................................................................... 2, 4

Fed. R. Civ. P. 60(b) ............................................................................... 3, 4

**Local Rules**

C.D. Cal. R. 6-1 ........................................................................................... 2

C.D. Cal. R. 7-3 ....................................................................................... 1, 2

C.D. Cal. R. 7-12 ................................................................................... 1, 12

**Other Authorities**

Report of the Judicial Council's Special Committee on Jurisdiction,
 Nov. 25, 1968 ....................................................................................... 11

Stevenson & Fitzgerald, Cal. Prac. Guide: Fed. Civ. Proc. Before Trial
 (2026)
 ¶ 6:194 ..................................................................................................... 5
 ¶ 6:205 ..................................................................................................... 5

Weil & Brown et al., Cal. Prac. Guide: Civ. Proc. Before Trial
 (2026)
 ¶ 4:128 ................................................................................................... 10

COMBINED RESPONSE TO DEFENDANTS' REQUEST TO SET ASIDE DEFAULTS AND REPLY IN
SUPPORT OF PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT

Plaintiff Northern Light Medical Management, LLC ("NLMM") respectfully submits the following combined (i) response to Defendants American Healthcare Systems Corp., Inc., Waukegan Illinois Hospital Company, LLC, and Mike Sarian's (collectively, "Defendants") request to set aside the defaults (Opp'n, ECF No. 31), and (ii) reply in support of NLMM's Motion for Entry of Default Judgment (the "Motion," ECF Nos. 28, 28-1).[1]

## I.    DEFENDANTS' REQUEST TO SET ASIDE THE DEFAULTS IS PROCEDURALLY IMPROPER.

In its August 3, 2026 Order, the Court recognized that Defendants could not seek affirmative relief through their Opposition because "[a] request for a court order must be made by motion." (Order at 1–2, ECF No. 32 (quoting Fed. R. Civ. P. 7(b)(1))); *see KT AMC Co. v. LWC Cap., LLC*, No. 217CV04289ODWPLA, 2017 WL 7171719, at *1 (C.D. Cal. Nov. 6, 2017) ("The proper remedy for a defendant seeking to set aside a default and defend an action is to file a motion to set aside entry of default"). However, in the interest of judicial economy, the Court construed the Opposition as a motion to set aside Defendants' defaults. (Order at 2.) Although that construction spared Defendants the consequences of their choice of vehicle, it did not cure every defect.[2]

A motion to set aside a default is subject to Local Rule 7-3, which required Defendants' counsel to confer with NLMM at least seven days before filing. *See Darbeevision, Inc. v. C&A Mktg., Inc.*, No. SACV1800725AGSSX, 2018 WL 5877280, at *1 (C.D. Cal. June 11, 2018) (noting defendants' failure to conduct a

---

[1] NLMM respectfully requests oral argument on the matters addressed herein. (*See* concurrently filed Request for Oral Argument.)

[2] Because NLMM's Motion was originally noticed for hearing on August 24, 2026, any opposition was due July 30, 2026 under Section 9.b(a) of the Court's Standing Order. (ECF No. 18.) Defendants filed on July 31, 2026; thus, their Opposition was untimely. *See* C.D. Cal. R. 7-12 (failure to file within deadline "may be deemed consent to the granting … of the motion").

188624.1

1

Local Rule 7-3 conference before filing their motion for relief from default). Defendants' counsel never contacted NLMM to discuss the relief the Opposition requests. (Suppl. Tiraturyan Decl. ¶¶ 2–4.)[3]

Additionally, Sarian states that he learned of the defaults on July 17, 2026, and that he authorized counsel to appear at that time. (*See* Sarian Decl. ¶¶ 7, 9.) Defendants therefore had ample time to proceed properly by filing a Rule 55(c) motion on or before July 27, 2026, which could have been noticed for hearing on August 24, 2026—the date originally set for NLMM's Motion. *See* C.D. Cal. R. 6-1. Compliance with Local Rule 7-3 would have required only that counsel confer with NLMM by July 20, 2026. Defendants instead waited until July 29, 2026 to appear—two days after the window for a properly noticed motion had closed—and filed the Opposition two days after that.

Had Defendants conferred, the parties could have addressed whether Defendants would lodge a proposed answer, identify a defense, or accept conditions on any relief (*see infra* §§ II.C, IV), and this Court might have been spared some of the present briefing. Defendants' filing thus arrives in the same manner as everything else they have done in this case: late and in disregard of the governing rules and procedures. The Court should weigh that pattern in deciding whether Defendants have shown good cause to set aside their defaults.

## II.    DEFENDANTS' IMPROPER REQUEST TO SET ASIDE THE DEFAULTS SHOULD BE DENIED.

### A.    Defendants Bear the Burden of Establishing Good Cause.

In the Ninth Circuit, "[t]he 'good cause' standard that governs vacating an entry of default under Rule 55(c) is the same standard that governs vacating a default

---

[3] Section 9.c of this Court's Standing Order provides that "[a]ny motion that fails to comply with Local Rule 7-3 will be denied."

188624.1                                    2

judgment under Rule 60(b)." *Franchise Holding II, LLC v. Huntington Restaurants Grp., Inc.*, 375 F.3d 922, 925 (9th Cir. 2004).

To determine "good cause," courts consider "(1) whether the plaintiff will be prejudiced, (2) whether the defendant has a meritorious defense, and (3) whether culpable conduct of the defendant led to the default." *Brandt v. Am. Bankers Ins. Co. of Fla.*, 653 F.3d 1108, 1111 (9th Cir. 2011) (quoting *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984) (per curiam)); *United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010) ("*Mesle*"). The Ninth Circuit has held that because "these factors are disjunctive, the district court [i]s free to deny the motion 'if any of the three factors was true.'" *Franchise Holding II*, 375 F.3d at 926 (quoting *Am. Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1108 (9th Cir. 2000)). Defendants bear the burden of showing that any of the three factors favor setting aside their defaults. *Id.*

**B.     Setting Aside the Defaults Would Prejudice NLMM.**

"To be prejudicial, the setting aside of a [default] must result in greater harm than simply delaying resolution of the case." *Mesle*, 615 F.3d at 1095 (quoting *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 701 (9th Cir. 2001), *overruled on other grounds by Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141 (2001)). "The standard is whether [plaintiff's] ability to pursue [it]s claim will be hindered." *Falk*, 739 F.2d at 463; *TCI Grp.*, 244 F.3d at 701 ("[T]o be considered prejudicial, 'the delay must result in tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion'" (citation omitted)). Defendants' delay, which threatens NLMM's ability to collect, meets that standard.

In *Franchise Holding II*, the Ninth Circuit affirmed a finding of prejudice because further delay "would allow [defendant] to move and hide assets." 375 F.3d at 926–27. The defendant there insisted it was willing and able to settle but the Ninth Circuit held its behavior suggested otherwise because the defendant "ha[d] not made a single payment in two years" and "filed no pleadings with the district court until

188624.1                                                         3

after the clerk entered the default." *Id.* at 927. Here, AHS and Vista agreed to pay $675,000 to resolve the Prior Action, belatedly made the first installment payment on March 13, 2026, and have paid nothing since. (Compl. ¶¶ 18, 21, 23–24.) After NLMM served the second written notice of default, Defendants let the ten-day cure period run out without responding. (*Id.* ¶¶ 23–25.) They then ignored this action for two months while the Clerk entered their defaults, yet their papers say nothing about the money they owe.

Indeed, delay affects the parties unevenly because NLMM performed its side of the Settlement Agreement in full by accepting a discount on its claims and dismissing the Prior Action with prejudice, so the causes of action it once held are gone and cannot be revived no matter how this motion is resolved. (Rabinovich Decl. ¶¶ 5, 7–8; Compl. ¶ 22.) In exchange, NLMM received a payment obligation from AHS and Vista that Defendants stopped honoring after one installment. Therefore, NLMM's only remaining path to relief is a judgment in this action. Setting aside the defaults would suspend that path for months while Defendants remain in control of assets from which a judgment would eventually be satisfied. (*See* Compl. ¶¶ 29–34.) That is the "greater opportunity for fraud or collusion" that *TCI Group* treats as tangible harm, 244 F.3d at 701, as well as the risk on which the *Franchise Holding II* court affirmed denial of relief under Rule 55(c) and 60(b).

**C.    Defendants Do Not Identify Any Meritorious Defense, Which Alone Warrants Denying Relief.**

To satisfy the second factor, a defendant must "allege sufficient facts that, if true, would constitute a defense[.]" *United States v. Aguilar*, 782 F.3d 1101, 1107 (9th Cir. 2015). That requires "specific facts that would constitute a defense," and a "mere general denial without facts to support it" is not sufficient. *Franchise Holding II*, 375 F.3d at 926 (quoting *Madsen v. Bumb*, 419 F.2d 4, 6 (9th Cir. 1969)). A party who offers "only conclusory statements that a dispute existed" has not carried that burden. *Id.*

188624.1

4

Defendants offer exactly that by asserting in a single clause that "substantial factual and legal disputes remain" (Opp'n at 3), but they never identify what those disputes are. The Opposition and Sarian's Declaration are both confined to disputing service and notice, with neither contesting any element of NLMM's breach of contract or tortious interference claims. Indeed, Defendants do not assert a single affirmative defense to either claim; nor do they lodge a proposed answer, which is the ordinary vehicle for demonstrating that a defense exists. *Cf. R & A Synergy LLC v. Walmart, Inc.*, No. CV1902587ABGJSX, 2019 WL 8137728, at *3 (C.D. Cal. Oct. 23, 2019) (finding meritorious defense where defendants filed a proposed answer); *see also* Stevenson & Fitzgerald, Cal. Prac. Guide: Fed. Civ. Proc. Before Trial ¶¶ 6:194, 6:205 (2026) (listing proposed answer among the papers defendant should submit to demonstrate meritorious defense). The Court is therefore left with Defendants' conclusory assertion that disputes exist without any facts from which to evaluate it.[4]

None of this is surprising, as Defendants' defaults admit the Complaint's well-pleaded allegations. Fed. R. Civ. P. 8(b)(6); *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). But the result would be no different if the defaults were set aside and NLMM were to try this case on the merits. For this factor, "[t]he underlying concern… is to determine whether there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default." *Hawaii Carpenters' Tr. Funds v. Stone*, 794 F.2d 508, 513 (9th Cir. 1986). Here, any such possibility is extremely remote because AHS and Vista's unexcused breach of the Settlement Agreement cannot be disputed. Even now, with every incentive to say otherwise, Defendants do not claim that any payment beyond the first

---

[4] Should Defendants attempt to cure this failure in their reply by lodging a proposed answer or articulating defenses for the first time, that attempt would come too late because arguments and evidence presented for the first time in a reply brief are not properly considered, and entertaining them here would deprive NLMM of any opportunity to respond. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007).

188624.1

5

installment was made or offer any other excuse for the nonpayment—and they do not contest the amount of claimed damages at all. *See TriPharma, LLC v. First Fruits Bus. Ministry*, No. SACV12404JVSANX, 2013 WL 12129386, at *4 n.9 (C.D. Cal. Apr. 2, 2013) ("The defaulting Defendants filed no Opposition to the amounts or types of damages sought, despite their right to do so."). In this circumstance, the Ninth Circuit has held that "reopening of the case … would cause needless delay and expense to the parties and court system." *Hawaii Carpenters' Tr. Funds*, 794 F.2d at 513. Defendants' request to set aside the defaults asks this Court to do just that.

In any event, because the good cause factors are disjunctive, Defendants' failure on this factor alone is sufficient to justify denying relief, regardless of how the others come out. *Mesle*, 615 F.3d at 1091 ("[A] finding that any one of [the three] factors is true is sufficient reason for the district court to refuse to set aside the default."); *see Zurich Am. Ins. Co. v. Sealink Ins. Serv. Corp.*, 752 F. App'x 406, 407 (9th Cir. 2018) ("We need not reach the issue of defendants' culpable conduct because defendants' lack of a meritorious defense is sufficient to justify the district court's refusal to set aside the default and default judgment.").

### D.    Defendants' Failure to Respond Was Culpable.

"A defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and intentionally failed to answer." *Mesle*, 615 F.3d at 1092 (citation modified). However, "[w]hen considering a legally sophisticated party's culpability in a default, an understanding of the consequences of its actions may be assumed, and with it, intentionality." *Id.* at 1093; *Franchise Holding II*, 375 F.3d at 924–26 (notice sufficient for finding of culpable conduct where the party's lawyer accepted service and failed to respond to the action); *see also Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 690 (9th Cir. 1988).

Here, each Defendant is legally sophisticated because (i) AHS and Vista are corporate healthcare operators that litigated the Prior Action in this Court through Messrs. Gourjian and Papazian, and (ii) Sarian, by his own account, serves as AHS's

188624.1

6

chief executive officer and a manager of Vista. (Sarian Decl. ¶ 1.) Those same attorneys also negotiated the Settlement Agreement and received NLMM's formal notices of default under Section 2.4 of the Agreement on March 2 and April 2, 2026, each of which stated that NLMM would seek entry of judgment for the unpaid balance if the default went uncured. (*See* Tiraturyan Decl. ¶¶ 7–10, 13–14, Exs. 4–5, 8–9.) They also received the Complaint and Notice of Related Cases by email the day this action was filed. (*Id.* ¶ 21, Ex. 13 at 2.) And when NLMM's counsel followed up on May 27, 2026, Mr. Papazian responded that he would "contact ***the clients*** and ask if we can accept service of this new matter on their behalf" and would respond shortly. (*Id.* Ex. 13 at 1 (emphasis added).) Counsel never responded and none of the Defendants filed anything in this Court until two months later, after the Clerk had entered three defaults and after NLMM had moved for judgment. *See Link v. Wabash R. Co.*, 370 U.S. 626, 634 (1962) ("[E]ach party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'"). Defendants were on notice that NLMM intended to sue in this Court, so their failure to answer, or to seek so much as an extension, was theirs alone. Accordingly, because each Defendant is a sophisticated party that had counsel throughout, intentionality is presumed. *Mesle*, 615 F.3d at 1093.

Defendants' denials of any "deliberate decision to ignore this action" (Sarian Decl. ¶¶ 6, 10; Opp'n at 4, 7) do not rebut that presumption, because they leave the critical period unexplained. Sarian's account begins on July 17, 2026, after all three defaults had been entered (Sarian Decl. ¶ 7), but his Declaration is silent about the two months during which Defendants' counsel held the Complaint and promised to consult "the clients" (Tiraturyan Decl. ¶ 21, Ex. 13 at 1). Thus, even if Defendants were *not* sophisticated parties (which they are), they still do not offer a "credible, good faith explanation negating any intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process[.]" *TCI Grp.*, 244 F.3d at 697.

188624.1

7

**E.    Defendants Were Properly Served.**

Defendants devote the bulk of their Opposition to contesting service, but their arguments are unpersuasive and unsupported. Vista does not contest that delivery to its registered agent was facially valid (*see* Opp'n at 6), whereas AHS and Sarian argue that the papers never made their way to the right people (*id.* at 4–5). But AHS and Sarian's bare assertions, without any supporting evidence, are immaterial because "[a] signed return of service constitutes prima facie evidence of valid service which can be overcome only by ***strong and convincing evidence***." *S.E.C. v. Internet Sols. for Bus. Inc.*, 509 F.3d 1161, 1166 (9th Cir. 2007) (emphasis added).

**1.    Sarian**

Because Sarian was served under Federal Rule of Civil Procedure 4(e)(2)(B), which permits delivery at a defendant's dwelling to a person of suitable age and discretion residing there, the diligence requirement Defendants draw from California Code of Civil Procedure section 415.20(b) (Opp'n at 5) has no application here. (*See* Mot. § IV.A.3; Tiraturyan Decl. ¶ 20, Ex. 12.)

Sarian's remaining argument is that he never received the Summons and Complaint and therefore had no notice of this action. (Opp'n at 5; Sarian Decl. ¶¶ 2–3.) Under Rule 4(e)(2)(B), the only relevant inquiry is whether the papers were left at Sarian's dwelling with a resident of suitable age and discretion, and Sarian does not deny that they were. *See craigslist, Inc. v. Hubert*, 278 F.R.D. 510, 514 (N.D. Cal. 2011) ("Rule 4(e) does not require… that the defendant ever be told of service of process for the service to be valid."). Sarian does not declare that the address at which service was effected was not his dwelling, that his mother does not reside there, or that the papers were left with anyone else. (*See* Sarian Decl. ¶¶ 2–3.) Thus, Sarian's self-serving denial of receiving the service packet does not amount to "strong and convincing evidence." *Internet Sols.*, 509 F.3d at 1167 (citing *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 302–03 (2d Cir. 2005) (finding that the district court properly determined that a defaulting defendant received service of process where the only

188624.1

FROST

evidence that he did not was his own affidavit denying receipt of the summons)); *Herbalife Int'l of Am., Inc. v. Healthy1 Inc.*, 830 F. App'x 801, 803 (9th Cir. 2020) (rejecting defendant's "barebones declaration denying receipt of service" where declaration failed to state where defendant resided or where she was at the time of service); *craigslist*, 278 F.R.D. at 513–14 ("[W]here a plaintiff has filed a signed return of service, courts regularly find that a self-serving declaration that a person was not served is insufficient to overcome this prima facie evidence of valid service.").

The return also shows that copies were mailed to the same address the same day they were served. (Tiraturyan Decl. ¶ 20, Ex. 12.) Sarian does not dispute that the documents were mailed but argues that they never reached him. (Sarian Decl. ¶ 2.) That assertion is immaterial because a properly addressed and mailed item is presumed received, so Sarian's bare denial of receipt again fails to rebut the presumption. *See Mahon v. Credit Bureau of Placer Cnty. Inc.*, 171 F.3d 1197, 1201–02 (9th Cir. 1999); *see also Schikore v. BankAmerica Supplemental Ret. Plan*, 269 F.3d 956, 961 (9th Cir. 2001) (citing "settled feature of the federal common law" that "the proper and timely mailing of a document raises a rebuttable presumption that the document has been received by the addressee in the usual time."). Accordingly, Sarian has not provided strong and convincing evidence of invalid service.

### 2.    *AHS*

The Opposition describes, without any evidentiary support, 505 North Brand Boulevard as "a large, multi-tenant office building" and Mr. Mard as "a building security guard stationed in the common lobby" who lacked any connection to AHS and any authority "to accept or transmit legal documents." (Opp'n at 4.) Sarian's Declaration states only that neither he nor, "to [his] knowledge," any AHS officer or employee responsible for legal matters received the papers from "the building security guard." (Sarian Decl. ¶ 4; *see* NLMM's Evidentiary Objections Nos. 2–3.) In other words, Defendants' description of the building, lobby, and Mr. Mard's role comes from the Opposition alone and is unsupported by *any* admissible evidence. *See*

188624.1                                  9

*Barcamerica Int'l USA Tr. v. Tyfield Importers, Inc.*, 289 F.3d 589, 593 n.4 (9th Cir. 2002) ("[T]he arguments and statements of counsel 'are not evidence…'"); *Duran v. City of Porterville*, No. 1:12-CV-01239-LJO, 2013 WL 178189, at *3 (E.D. Cal. Jan. 16, 2013) (declining to consider counsel's assertions regarding service of process because "[a]ny factual assertions made in a brief must be supported by otherwise admissible evidence.").

Here, because a registered California process server left the papers with "Sam Mard, Security, Person in Charge" at the office of both AHS and its agent for service of process, and mailed copies to AHS at the same address that day (Tiraturyan Decl. ¶ 19, Ex. 11 at 1), that return is presumed true. Cal. Evid. Code § 647; *Internet Sols.*, 509 F.3d at 1166.

California Code of Civil Procedure section 415.20(a) allows substituted service on a corporation by leaving the papers at its office "with the person who is apparently in charge thereof" and then mailing copies. Accepting Defendants' description, "a building security guard stationed in the common lobby" (Opp'n at 4) is sufficient for the process server to reasonably treat him as a person "apparently in charge," so Defendants' account of Mr. Mard, even if it were evidence (which it is not), would not defeat the validity of service here. *See* Weil & Brown et al., Cal. Prac. Guide: Civ. Proc. Before Trial ¶ 4:128 (2026) (substitute service may be effected on "secretaries, receptionists, doorkeepers, or other persons 'apparently in charge' of the premises"; authorization to accept service is not required); *Bein v. Brechtel-Jochim Grp., Inc.*, 6 Cal. App. 4th 1387, 1393 (1992) (gate guard was "person apparently in charge" for purposes of substituted service on a corporation because service need only be made on someone whose relationship with the defendant "makes it more likely than not that they will deliver process to the named party"); *see also Pasadena Medi-Ctr. Assocs. v. Superior Ct.*, 9 Cal. 3d 773, 778 (1973) (holding service statutes "should be liberally construed to effectuate service and uphold the jurisdiction of the court if actual notice

COMBINED RESPONSE TO DEFENDANTS' REQUEST TO SET ASIDE DEFAULTS AND REPLY IN
SUPPORT OF PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT

has been received by the defendant…" (quoting Report of the Judicial Council's Special Committee on Jurisdiction, Nov. 25, 1968, at 14–15)).

Furthermore, although Defendants deny receiving papers from Mr. Mard (Opp'n at 4; Sarian Decl. ¶ 4), they do not deny that AHS received the copies mailed to it at Suite 1200. Therefore, service on AHS was valid and its default was properly entered.

### 3. *Vista*

Under Rule 4(h), service may be effected by delivering the summons and complaint to a defendant entity's registered agent. Fed. R. Civ. P. 4(h)(1)(B). Here, Vista concedes that NLMM's delivery of the Summons and Complaint to the authorized representative of its registered agent was facially valid, but argues that the papers "were not transmitted to" the correct personnel. (Opp'n at 6; Sarian Decl. ¶ 5.) This argument is unpersuasive because what happens to the papers *after* an agent is properly served is immaterial. *Real v. St. Jude Med., Inc.*, No. 2:16-CV-09632-ODW-AS, 2017 WL 1173903, at *3 (C.D. Cal. Mar. 29, 2017) ("[I]t would be a slippery slope for the Court to hold that valid service on an agent was ineffective just because the *agent* bungled his or her duty to then forward the documents to the right person." (emphasis in original)); *see also Myer v. Nitetrain Coach Co.*, 459 F. Supp. 2d 1074, 1078 (W.D. Wash. 2006) (finding service effective when process server "handed a copy of the summons and complaint to [defendant]'s registered agent."). Accordingly, service on Vista was also proper.

## III. THE *EITEL* FACTORS SUPPORT ENTRY OF DEFAULT JUDGMENT.

NLMM's Motion addressed each of the seven factors set out in *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986), and explained why all of them favor entry of judgment. (Mot. § IV.B.) The Opposition, however, addresses only *three* of those factors by (i) contesting prejudice, (ii) characterizing Defendants' neglect as excusable, and (iii) invoking the policy favoring decisions on the merits. (Opp'n at 3–

7.) Each of these arguments fails, while the factors Defendants leave unaddressed independently support entry of judgment.

## A. Defendants Do Not Contest Most of the *Eitel* Factors.

Tellingly, Defendants do not contest the four factors concerned with the substance of NLMM's claims, which ask whether the claims have substantive merit, whether the Complaint sufficiently pleads them, whether the sum of money at stake counsels against judgment, and whether any material facts are in dispute. *Eitel*, 782 F.2d at 1471–72. By failing to respond to these arguments, Defendants have conceded them. *See Ramirez v. Ghilotti Bros. Inc.*, 941 F. Supp. 2d 1197, 1210 (N.D. Cal. 2013) (finding defendants' failure to respond to an argument "conced[ed] the issue"); *Hill St. Health Servs. LLC v. Cnty. of Los Angeles*, No. CV1602486BROAFMX, 2016 WL 9453998, at *5 (C.D. Cal. Nov. 16, 2016) (treating plaintiff's failure to address a dismissal argument in opposition as conceding the claim); *see also* C.D. Cal. R. 7-12.

Nor could Defendants have responded. As to AHS and Vista, the admitted allegations foreclose *any* defense because they executed the Settlement Agreement, failed to pay the second installment, received written notice of default, and let the cure period lapse, which accelerated the entire unpaid balance. (Compl. ¶¶ 17–25.) Indeed, neither the Opposition nor Sarian's Declaration provides any legitimate excuse for AHS and Vista's nonpayment. (*Supra* § II.C.) Nor do Defendants address *any* aspect of NLMM's tortious interference claim. (*See* Mot. § IV.B.2(b).) Defendants' lone gesture at the merits—that "substantial factual and legal disputes remain" (Opp'n at 3)—does not provide any meaningful insight into what that dispute could even be. Accordingly, the second through fifth *Eitel* factors favor entry of default judgment.

## B. NLMM Would Be Prejudiced Absent Default Judgment.

Defendants argue that NLMM "will suffer no legally cognizable prejudice" because this action "remains at an early stage" and denial would "merely require Plaintiff to litigate its claims on the merits." (Opp'n at 5.) That argument assumes that

188624.1

12

there *are* any merits to litigate, but as explained above, Defendants do not identify what those merits are. (*See supra* §§ II.C, III.A.)

In any event, by asking only whether "evidence has been lost, discovery has become more difficult, or Plaintiff's ability to prosecute its claims has otherwise been impaired," Defendants apply the wrong standard because the inquiry under the first *Eitel* factor is whether NLMM will be left without a means of recovery if judgment is denied. *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). NLMM surrendered claims exceeding $1 million and dismissed the Prior Action with prejudice, which leaves the Settlement Agreement as its only asset and this action as its only means of enforcing it. (*See* Mot. § IV.B.1; *supra* § II.B.) NLMM therefore has no source of recovery apart from a judgment in this action; thus, this *Eitel* factor also favors default judgment.

## C.    Defendants' Default Was Not the Product of Excusable Neglect.

The sixth *Eitel* factor "favors default judgment when the defendant has been properly served or the plaintiff demonstrates that the defendant is aware of the lawsuit." *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012). Not only are both true here (*supra* §§ II.D–E), but Defendants also never specifically identify what their purported excusable neglect was. The Opposition asserts that Defendants' failure to respond resulted from "mistake, inadvertence, surprise, *or* excusable neglect" without ever identifying which one applies or what facts would support it. (Opp'n at 3, 4–5, 6, 7 (emphasis added).) The only factual account Defendants provide is Sarian's self-serving assertion that the papers never reached the right people, which fails for the reasons stated above. (*Supra* § II.E.) This factor thus also supports default judgment.[5]

---

[5] Defendants' assertion of excusable neglect is also difficult to square with AHS and Vista's history of defaulting twice under the Settlement Agreement, each time after written notice warning that NLMM would seek judgment. *See Gen. Elec. Cap. Corp. v. Master Kraft Machining Inc.*, No. C-11-03238 CW EDL, 2011 WL 6101023, at *3

**D.      The Policy Favoring Decisions on the Merits Does Not Preclude Judgment.**

Defendants' final argument is that the "strong policy favoring resolution on the merits" weighs against entry of judgment. (Opp'n at 7.) Yet that policy, "standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177 (citation omitted). The policy should carry even less weight where, as here, a trial could not produce a result different from the one the defaults have already established. (*See supra* § II.C.)

Prolonging this case would also leave *Defendants* worse off because Section 12 of the Settlement Agreement entitles the prevailing party in any litigation arising out of the agreement to recover its reasonable attorneys' fees, costs, and expenses. (Tiraturyan Decl. ¶ 5, Ex. 2 §§ 2.4(c), 12; *see* Compl. ¶¶ 25, 42 (alleging entitlement to "reasonable attorneys' fees and costs NLMM has incurred and will continue to incur in enforcing the Settlement Agreement").) Requiring NLMM to prove essentially undisputed claims through summary judgment or trial would only serve to increase the judgment amount AHS and Vista must ultimately satisfy. Accordingly, the policy favoring decisions on the merits does not outweigh the other six *Eitel* factors.

**IV.      ANY RELIEF FROM THE DEFAULTS SHOULD BE CONDITIONED ON JUST TERMS.**

Should the Court be inclined to set aside the defaults, it should do so only on terms that protect NLMM against the prejudice Defendants' defaults have caused. The Ninth Circuit has held that "reasonable conditions may be imposed in granting a motion to vacate a default judgment" and that "it is appropriate to condition setting aside a default upon the payment of a sanction." *Nilsson, Robbins, Dalgarn, Berliner,*

(N.D. Cal. Oct. 12, 2011) (no excusable neglect where defendants had previously defaulted under the same lease, and defaulted again after settling the lawsuit that first default produced), *R. & R. adopted*, No. C 11-3238 CW, 2011 WL 6100803 (N.D. Cal. Dec. 7, 2011).

188624.1

14

*Carson & Wurst v. Louisiana Hydrolec*, 854 F.2d 1538, 1546–47 (9th Cir. 1988) (per curiam); *see, e.g.*, *Brandt*, 653 F.3d at 1110 n.1 (affirming order setting aside default judgment where relief was conditioned on defendant's reimbursement of plaintiffs' attorneys' fees, travel expenses, and mortgage payments). Such conditions serve to rectify "any prejudice suffered by the non-defaulting party as a result of the default and the subsequent reopening of the litigation." *Nilsson*, 854 F.2d at 1546.

NLMM therefore requests, in the alternative to its request for entry of default judgment, that any order setting aside the defaults require Defendants to (i) pay the fees and costs NLMM incurred in obtaining the defaults and in this motion practice, and (ii) post a bond securing, at minimum, the $300,000.00 accelerated balance, together with interest accrued to date, pending resolution on the merits. *See Nilsson*, 854 F.2d at 1546 (recognizing reimbursement of costs as "[t]he condition most commonly imposed" and that "[i]n some cases, it may also be appropriate for the defendant to be required to post bond to secure the amount of the default judgment pending a trial on the merits").

## V.    CONCLUSION

For the foregoing reasons, and for the reasons set forth in the Motion, NLMM respectfully requests that the Court enter default judgment as to each Defendant. Alternatively, if the Court is inclined to set aside Defendants' defaults, NLMM respectfully requests that it condition that relief on Defendants' payment of the fees and costs NLMM incurred in obtaining the defaults and in this motion practice, and on Defendants' posting of a bond pending resolution on the merits.

188624.1

15

DATED: August 10, 2026         Respectfully submitted,

FROST LLP


By:  _____/s/ David Tiraturyan_____
CHRISTOPHER FROST
BENJAMIN KASSIS
DAVID TIRATURYAN
Attorneys for Plaintiff
NORTHERN LIGHT MEDICAL
MANAGEMENT, LLC

188624.1

16

## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Northern Light Medical Management, LLC certifies that this brief contains 5,144 words, which complies with the word limit of L.R. 11-6.1.

DATED: August 10, 2026                    FROST LLP


By:    _/s/ David Tiraturyan_
       DAVID TIRATURYAN
       Attorneys for Plaintiff
       NORTHERN LIGHT MEDICAL
       MANAGEMENT, LLC

COMBINED RESPONSE TO DEFENDANTS' REQUEST TO SET ASIDE DEFAULTS AND REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT

## CERTIFICATE OF SERVICE

I hereby certify that on August 10, 2026, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court via the Court's CM/ECF system, which will automatically generate and send notice of this filing to all attorneys of record who have appeared in this case and who are registered users of the Court's CM/ECF system. Parties may access this filing through the Court's CM/ECF system.

DATED: August 10, 2026          FROST LLP


                                By:      /s/ David Tiraturyan
                                        DAVID TIRATURYAN
                                        Attorneys for Plaintiff
                                        NORTHERN LIGHT MEDICAL
                                        MANAGEMENT, LLC

COMBINED RESPONSE TO DEFENDANTS' REQUEST TO SET ASIDE DEFAULTS AND REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT