CHRISTOPHER FROST (SBN 200336)
chris@frostllp.com
BENJAMIN KASSIS (SBN 298844)
ben@frostllp.com
DAVID TIRATURYAN (SBN 350995)
david1@frostllp.com
FROST LLP
10960 Wilshire Boulevard, Suite 2100
Los Angeles, California 90024
Telephone: (424) 254-0441
Facsimile: (424) 600-8504

Attorneys for Plaintiff
NORTHERN LIGHT MEDICAL MANAGEMENT, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

NORTHERN LIGHT MEDICAL MANAGEMENT, LLC,

Plaintiff,

v.

AMERICAN HEALTHCARE SYSTEMS CORP., INC.; WAUKEGAN ILLINOIS HOSPITAL COMPANY, LLC, d.b.a. VISTA MEDICAL CENTER EAST; MIKE SARIAN, individually and as Trustee of the SARIAN FAMILY TRUST; and DOES 1 through 10, inclusive,

Defendants.

Case No. 2:26-cv-04980-MCS-BFMx

*Assigned to: Hon. Mark C. Scarsi*

**PLAINTIFF NORTHERN LIGHT MEDICAL MANAGEMENT, LLC'S MEMORANDUM IN OPPOSITION TO DEFENDANT MIKE SARIAN'S MOTION TO DISMISS**

Hearing Information:
Judge: Hon. Mark C. Scarsi
Date: October 19, 2026
Time: 9:00 a.m.
Crtrm.: 7C (7th Floor)

Action Filed: May 8, 2026

# TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. BACKGROUND ........ 2

A. The Prior Action and the Settlement Agreement. ........ 2

B. Sarian and His Role in the Settlement. ........ 3

C. Sarian's Individual Interest in the Breach. ........ 3

III. LEGAL STANDARD ........ 5

IV. ARGUMENT ........ 6

A. The Motion Fails on Procedural Grounds. ........ 6

B. NLMM Has Properly Pleaded Its Tortious Interference Claim. ........ 6

C. Agent's Immunity Is an Affirmative Defense That Does Not Appear on the Face of the Complaint. ........ 8

1. Privilege and Immunity Are Matters of Defense. ........ 8

2. Sarian's Purported Justifications Are for the Factfinder. ........ 10

D. In Any Event, NLMM's Allegations Against Sarian Satisfy *Casden*. ........ 11

1. The Court Should Look to the Alleged Act. ........ 11

2. The Breach Left the AHS Parties Worse Off. ........ 12

3. Sarian's Gains Were the AHS Parties' Losses. ........ 13

4. Casden Was Decided After Factual Findings. ........ 14

E. Sarian's Arguments and Cited Authorities Are Unpersuasive. ........ 15

F. Requests for Punitive Damages Are Not the Proper Subject of Rule 12 Motions. ........ 17

V. CONCLUSION ........ 18

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Banks v. Gill Distribution Centers, Inc.*, 263 F.3d 862 (9th Cir. 2001) .......... 18

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 5, 14

*Celebrity Chefs Tour, LLC v. Macy's, Inc.*, 16 F. Supp. 3d 1159 (S.D. Cal. 2014) .......... 17

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242 (9th Cir. 1990) .......... 13

*Harris v. Amgen, Inc.*, 788 F.3d 916 (9th Cir. 2015) .......... 8

*Jones v. Bock*, 549 U.S. 199 (2007) .......... 8

*Koala v. Khosla*, 931 F.3d 887 (9th Cir. 2019) .......... 5, 10

*Linkenhoker v. Rupf*, No. C06-05432 EDL, 2007 WL 404783 (N.D. Cal. Feb. 2, 2007) .......... 17

*Lopez v. Williams*, No. EDCV17882JGBSPX, 2017 WL 10560529 (C.D. Cal. Aug. 15, 2017) .......... 17

*Los Angeles Airways, Inc. v. Davis*, 687 F.2d 321 (9th Cir. 1982) .......... 11

*Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025 (9th Cir. 2008) .......... 5, 18

*McKeever v. Block*, 932 F.2d 795 (9th Cir. 1991) .......... 14

*Moss v. U.S. Secret Serv.*, 572 F.3d 962 (9th Cir. 2009) .......... 5

*Multiple Energy Technologies, LLC v. Casden*,
183 F. 4th 1149 (9th Cir. 2026) .......... *passim*

*Multiple Energy Techs., LLC v. Casden*,
No. CV 21-01149 PA (RAOX), 2021 WL 4733732, at *6 (C.D. Cal. June 23, 2021) .......... 10

*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2001) .......... 5

*O'Brien as Tr. of Raymond F. O'Brien Revocable Tr. v. XPO CNW, Inc.*,
362 F. Supp. 3d 778 (N.D. Cal. 2018) .......... 9

*Pro 49 Dev., LLC v. Ness Express 1, LLC*,
No. 2:24-CV-01850-JAM-JDP, 2025 WL 437549 (E.D. Cal. Feb. 7, 2025) .......... 9

*Rivera v. Peri & Sons Farms, Inc.*,
735 F.3d 892 (9th Cir. 2013) .......... 8

*Rosenberg Bros. & Co. v. Arnold*,
283 F.2d 406 (9th Cir. 1960) .......... 18

*Summit Tech., Inc. v. High-Line Med. Instruments, Co.*,
933 F. Supp. 918 (C.D. Cal. 1996) .......... 17

*United Nat. Maint., Inc. v. San Diego Convention Ctr., Inc.*,
766 F.3d 1002 (9th Cir. 2014) .......... 6, 17

*Whittlestone, Inc. v. Handi-Craft Co.*,
618 F.3d 970 (9th Cir. 2010) .......... 17

**California Cases**

*A. F. Arnold & Co. v. Pac. Pro. Ins., Inc.*,
27 Cal. App. 3d 710 (1972) .......... 10

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
7 Cal. 4th 503 (1994) .......... 10, 15

*Collins v. Vickter Manor, Inc.*,
47 Cal. 2d 875 (1957) .......... 1, 8, 9

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.*,
11 Cal. 4th 376 (1995) .......... 17

*Dryden v. Tri-Valley Growers*,
65 Cal. App. 3d 990 (1977) .......... 15

*Mintz v. Blue Cross of California*,
172 Cal. App. 4th 1594 (2009) .......... 16

*Olivet v. Frischling*,
104 Cal. App. 3d 831 (1980) .......... 10, 11, 14

*Pac. Gas & Elec. Co. v. Bear Stearns & Co.*,
50 Cal. 3d 1118 (1990) .......... 7

*PMC, Inc. v. Kadisha*,
78 Cal. App. 4th 1368 (2000) .......... 16

*Woods v. Fox Broad. Sub., Inc.*,
129 Cal. App. 4th 344 (2005) .......... 8, 15

**Other Authorities**

C.D. Cal. R. 7-3 .......... 6

Fed. R. Civ. P. 8 .......... 10

Fed. R. Civ. P. 8(a) .......... 14

Fed. R. Civ. P. 9(b) .......... 17

Fed. R. Civ. P. 12 .......... 17

Fed. R. Civ. P. 12(b)(6) .......... 5, 8, 10, 17

Fed. R. Civ. P. 12(f) .......... 17

Plaintiff Northern Light Medical Management, LLC ("NLMM"), by and through its undersigned counsel of record, respectfully submits this memorandum in opposition to Defendant Mike Sarian's Motion to Dismiss (the "Motion" or "Mot.," ECF No. 41).

## I. INTRODUCTION

Defendant Mike Sarian unpersuasively invokes the "agent's immunity rule" to escape his liability for inducing the AHS Parties to breach their settlement obligations to NLMM.[1]

For its second claim for relief, NLMM alleges the existence of a valid and enforceable agreement of which Sarian had actual knowledge. (Compl. ¶¶ 44–45, ECF No. 1.) With that knowledge, NLMM alleges that Sarian caused the AHS Parties *not* to pay the second installment when it came due and *not* to cure the default that followed, and the AHS Parties breached as a result, damaging NLMM. (*Id.* ¶¶ 46–49.) NLMM's tortious interference claim against Sarian is therefore adequately pleaded. Most importantly, NLMM pleads that Sarian directed a breach that left the AHS Parties materially worse off to advance interests of his own, which run directly contrary to the AHS Parties' interests. (*Id.* ¶¶ 25, 28–34.)

California law does not immunize an agent, officer, director, or shareholder from suit for tortious interference with a contract simply because of that person's position or status. Indeed, *absent an applicable privilege*, interference claims may be brought against the agents, owners, officers, and directors of a contracting entity. *See, e.g.*, *Collins v. Vickter Manor, Inc.*, 47 Cal. 2d 875, 883 (1957) (reversing judgment and remanding with direction to overrule demurrer where plaintiffs sufficiently alleged tortious interference claim against officers, directors, and beneficial owners of contracting company).

---

[1] References to the "AHS Parties" are collectively to Defendants American Healthcare Systems Corp., Inc. ("AHS") and Waukegan Illinois Hospital Company, LLC d.b.a. Vista Medical Center East ("Vista").

In his Motion, Sarian argues that his personal stake in the breach is a "paradigmatic mixed-motive allegation" that cannot defeat his immunity. (Mot. at 7:9–14.) But the Ninth Circuit very recently clarified in *Multiple Energy Technologies, LLC v. Casden* that the agency immunity inquiry focuses on the agent's conduct and not his motives, and that such immunity is lost when the agent acts "for himself at the expense of his principal," such as when he "engages in other forms of self-dealing to the detriment of the principal." 183 F.4th 1149, 1155, 1157 (9th Cir. 2026). Here, the Complaint alleges exactly that, *i.e.*, that Sarian stood to gain from his inducement of the AHS Parties' breach of the settlement agreement when the AHS Parties lost.

Finally, a further reason for denying Sarian's Motion is that his claimed immunity is an affirmative defense that *must be proven*. Whether he can, in fact, prove that he is immune is a factual inquiry that should be answered by a factfinder after appropriate discovery. The Court should not answer that question now on the pleadings, where NLMM's allegations are taken as true and all inferences are drawn in its favor. Accordingly, Sarian's Motion should be denied.

## II. BACKGROUND

### A. <u>The Prior Action and the Settlement Agreement.</u>

In April 2025, NLMM sued the AHS Parties in this Court arising from a dispute under a master services agreement (the "Prior Action").[2] (Compl. ¶ 16.) NLMM and the AHS Parties ultimately reached a binding settlement at a court-ordered settlement conference, which was placed on the record before Magistrate Judge Mircheff and was later memorialized in the parties' Confidential Settlement Agreement and Mutual Release (the "Settlement Agreement"). (Compl. ¶ 17, Ex. A, ECF No. 1-1.)

[2] *N. Light Med. Mgmt., LLC v. Am. Healthcare Sys. Corp., Inc.*, No. 2:25-cv-03643-MCS-BFMx (C.D. Cal.). The instant action was deemed related to the Prior Action. (*See* Order Re Transfer, ECF No. 17.)

The Settlement Agreement required the AHS Parties to pay NLMM $675,000.00 in four installments: $375,000.00 by March 1, 2026, and $100,000.00 by each of April 1, May 1, and June 1, 2026. (*Id.*, Ex. A § 2.1.) If the AHS Parties failed to pay an installment and did not cure within ten calendar days of written notice of their default, the entire unpaid balance of the settlement payment would immediately become due, plus interest accruing at ten percent per annum and NLMM's reasonable attorneys' fees and costs. (*Id.* § 2.4.)

**B. <u>Sarian and His Role in the Settlement.</u>**

Sarian is AHS's founder and, through the Sarian Family Trust, its 51% owner. AHS, in turn, owns 100% of Vista. (Compl. ¶¶ 6–7, 30.) The Sarian Family Trust also owns 100% of Healthcare Systems of America Corp. ("HSA") and 60% of NOR Healthcare Systems Corp., two affiliated entities within Sarian's hospital enterprise. (*Id.* ¶ 30.)

Sarian attended the February 9, 2026 settlement conference personally, served as the AHS Parties' authorized representative, agreed to the settlement terms on the record on behalf of the AHS Parties, and later executed the Settlement Agreement on their behalf. (Compl. ¶ 27, Ex. A at 9.) He did so with full knowledge of the obligations he was binding the AHS Parties to perform, of NLMM's reliance on those obligations, and of the consequences of any breach by the AHS Parties, including the acceleration, ten percent interest, and NLMM's fees and costs. (*Id.* ¶ 27.)

**C. <u>Sarian's Individual Interest in the Breach.</u>**

Notwithstanding the obligations he had bound the AHS Parties to perform, Sarian caused them not to pay the second installment when it came due on April 1, 2026, and not to cure the resulting default within the ten-day cure period that followed NLMM's April 2, 2026 Notice of Default. (Compl. ¶ 28.) NLMM alleges that the AHS Parties had access to sufficient resources to satisfy the second installment when it came due, but that their default and continued refusal to pay are the result of Sarian's direction. (*Id.*)

NLMM further alleges that Sarian's direction to default left the AHS Parties *measurably* worse off than performance would have. Specifically, as a result of Sarian's direction, a $100,000.00 installment obligation for the AHS Parties became an immediately-due-and-payable balance of $300,000.00, together with interest accruing at ten percent per annum from April 13, 2026 and NLMM's reasonable attorneys' fees and costs of enforcement. (Compl. ¶¶ 25, 29; *id.*, Ex. A §§ 2.4(a)–(c), 12.) The AHS Parties thus had every reason to perform. (*Id.* ¶ 29.) Sarian, on the other hand, had every reason to direct the breach, because his individual interest in retaining and redirecting AHS's available cash was, and remains, materially adverse to AHS's interest in performance. (*Id.*)

As alleged above, the Sarian Family Trust holds 51% of AHS but 100% of HSA. (Compl. ¶¶ 7, 30.) Thus, cash that AHS retains and Sarian redirects to HSA moves from an entity in which he captures roughly half the return to one in which he captures all of it, and that disparity gives Sarian a direct personal financial incentive to retain AHS's available cash for redirection within the enterprise, rather than to disburse it to satisfy AHS's contractual obligations to creditors such as NLMM. (*Id.* ¶ 30.)

Three days before the Settlement Agreement's effective date, Sarian filed a declaration in support of an ex parte application for a temporary restraining order in the State Court Action, in which he testified that he formed HSA in September 2024 as a "vehicle to continue acquiring hospitals" outside of AHS. (Compl. ¶ 31; Sarian Decl. ISO Ex Parte Appl. for TRO ¶ 20 ("State Ct. Sarian Decl."), *Sarian v. Paronyan*, No. 26STCV05675 (Cal. Super. Ct. L.A. Cnty. Feb. 24, 2026) (the "State Court Action").) The cash Sarian is alleged to have withheld from NLMM is thus alleged to move out of the entity bound by the Settlement Agreement and into the entity through which Sarian pursues, and wholly owns, the enterprise's continued growth.

Sarian has also declared that he "personally guaranteed material acquisition debt" for AHS and the other affiliated companies in his enterprise. (Compl. ¶ 32; State

Ct. Sarian Decl. ¶ 7.) Thus, every dollar AHS retains rather than disburses to satisfy its settlement obligations to NLMM reduces the cushion between AHS's operating cash and the personal exposure Sarian faces under those guarantees. (Compl. ¶ 32.)

The Complaint further alleges that Sarian is using AHS as a source of liquidity to fund a personal fight over control of his hospital enterprise, including the retention of premium counsel and twenty-four-hour personal security "at an exorbitant cost," which Sarian is positioned to fund with AHS resources that would otherwise be available to satisfy the AHS Parties' obligations to NLMM. (*Id.* ¶ 33.)

For each of these reasons, Sarian's individual interest in directing AHS's available cash away from the AHS Parties' contractual obligations to NLMM was, and remains, materially adverse to the AHS Parties' interest in performing under the Settlement Agreement. (*Id.* ¶ 34.) But for Sarian's direction that the AHS Parties default, they would have paid the second installment when due, or at minimum would have cured the default within the ten-day cure period to avoid the consequences Section 2.4 imposes. (*Id.* ¶ 35.) The sufficiency of these allegations is discussed below.

## III. LEGAL STANDARD

"A Rule 12(b)(6) motion tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When reviewing a motion to dismiss, courts must "accept the complaint's well-pleaded factual allegations as true, and construe all inferences in the plaintiff's favor[.]" *Koala v. Khosla*, 931 F.3d 887, 894 (9th Cir. 2019) (citation omitted); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (on a 12(b)(6) motion, courts must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."). A complaint will survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory

'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.").

## IV. ARGUMENT

### A. <u>The Motion Fails on Procedural Grounds.</u>

As an initial matter, Sarian's Motion fails because his counsel, yet again, did not strictly comply with Local Rule 7-3. Sarian's Motion is not accompanied by a declaration from counsel "that sets forth at a minimum the date(s) the conference took place and the position of each party with respect to each disputed issue that will be the subject of the motion," which counsel "must" file "[i]f the parties are unable to reach a resolution that eliminates the necessity for a hearing." C.D. Cal. R. 7-3; (*see also* Initial Standing Order § 9.c, ECF No. 18 ("Counsel must comply with Local Rule 7-3, which requires counsel … to file a declaration confirming compliance.").) Because "[f]ailure to include such a declaration may result in the motion being denied," C.D. Cal. R. 7-3, and because this is not Sarian's first time failing to strictly comply with this Court's Local Rules and Standing Order,[3] this Court should deny the Motion. (*See* Initial Standing Order § 9.c ("Any motion that fails to comply with Local Rule 7-3 will be denied.").) In any event, the Motion fails on the merits.

### B. <u>NLMM Has Properly Pleaded Its Tortious Interference Claim.</u>

"Under California law, the elements for the tort of intentional interference with contractual relations are '(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.'" *United Nat.*

[3] *See, e.g.*, Defs.' Opp'n to Mot. for Default J., ECF No. 31 (untimely request for affirmative relief without L.R. 7-3 conference); Defs.' Reply Re: Defaults & Suppl. Sarian Decl., ECF Nos. 35, 35-1 (reply and supplemental declaration with new evidence and arguments filed seven days after deadline set by this Court).

*Maint., Inc. v. San Diego Convention Ctr., Inc.*, 766 F.3d 1002, 1006 (9th Cir. 2014) (quoting *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990)).

Sarian does not contest any of these elements and affirmatively states that he "was not a party to the contract." (Mot. at 4:3.) Instead, he asserts that his alleged conduct was privileged because the Complaint alleges he is AHS's CEO and served as the AHS Parties' authorized representative and signatory, and thus is a corporate agent immune from suit for inducing his principal's breach. (*Id.* at 5:11–26.) Clearly anticipating that the privilege is unavailable to an agent who acts for himself at his principal's expense, Sarian argues that the Complaint does not plead a "concrete act of self-dealing" and that any personal benefit he derived was shared with AHS, such that his conduct reflects at most a mixed motive. (*Id.* at 6:13–7:21.)

As demonstrated below, Sarian's arguments do not withstand scrutiny. Yet, notable among other omissions is that Sarian's Motion does not cite *Casden*, which is brand-new controlling authority that Sarian already told this Court, on August 24, 2026, "applies California law to a materially similar tortious-interference claim against a corporate CEO arising from a settlement agreement" and purportedly "establishes a substantial merits defense" to this exact claim. (Defs.' Reply Re: Defaults § IV.)

In *Casden*, the Ninth Circuit held that the immunity inquiry turns on the agent's conduct rather than his motive, with motive "relevant only to the extent it indicates whether or not the principal's interest is actually being protected," 183 F.4th at 1158 (cleaned up), which, regardless, is a factual question. The *Casden* court also reaffirmed the longstanding principle that, under California law, when an agent "acts *not* for and on behalf of his principal, but acts to benefit himself at the expense of his principal, then the agent loses his immunity. He stands as 'a stranger' to the contract and can be sued for tortious interference." *Id.* at 1152 (emphasis added).

With this authority in mind, NLMM addresses why each of Sarian's arguments fails.

### C. Agent's Immunity Is an Affirmative Defense That Does Not Appear on the Face of the Complaint.

#### *1. Privilege and Immunity Are Matters of Defense.*

Sarian bears the burden on his asserted immunity defense. *See Woods v. Fox Broad. Sub., Inc.*, 129 Cal. App. 4th 344, 356 (2005) (whether owners, officers, and directors acted with privilege or justification "is a defense which must be pleaded and proved"). Thus, because Sarian raises an affirmative defense on a Rule 12(b)(6) motion, dismissal of the tortious interference claim is proper here only if the affirmative defense is "obvious on the face of [the] complaint." *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013); *Harris v. Amgen, Inc.*, 788 F.3d 916, 943 (9th Cir. 2015) (dismissal of a claim based on an affirmative defense is proper "only if the defense is 'clearly indicated' and 'appear[s] on the face of the pleading.'"), *rev'd on other grounds*, 577 U.S. 308 (2016); *see also Jones v. Bock*, 549 U.S. 199, 215 (2007) ("Whether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground, not on the nature of the ground in the abstract.").

Here, the Complaint's allegations directly *refute* Sarian's defense. The California Supreme Court actually resolved this question nearly seventy years ago. In *Collins*, a group of real estate brokers sued a corporation's officers, directors, and beneficial owners for causing the corporation to withdraw from an escrow and breach its agreement to pay the brokers' commission, allegedly "to permit the corporation and themselves to profit by a sale to others." 47 Cal. 2d at 877–80. The trial court sustained a demurrer without leave to amend, *id.* at 877, but the Supreme Court ultimately reversed, holding that

> [w]hether or not [the officers] were privileged to cause the corporation to discontinue its relations with plaintiffs, in the belief that such a course of action was in the best interests of the corporation, ***is a matter of defense, to be decided by a resolution of the factual issues***

> ***presumptively involved*. *Their right, if any, to such privilege, does not affirmatively appear on the face of the complaint*.**

*Id.* at 883 (emphasis added). Thus, *Collins* is directly on point and remains good law, as confirmed by the Ninth Circuit in *Casden*, where it explained that *Collins* is consistent with its own standard because the California Supreme Court there "merely concluded that the asserted privilege in that case could not sustain a demurrer." *Casden*, 183 F.4th at 1156 n.3.

The same is true here. Like the defendants in *Collins*, Sarian is the controlling owner (through the Sarian Family Trust) and an officer and director of the contracting entities, and he is alleged to have caused their breach for his own benefit. (Compl. ¶¶ 7, 26–34.) Whether he can nonetheless establish that he acted for and on behalf of the AHS Parties is "a matter of defense," but his right to that defense "does not affirmatively appear on the face of the complaint." *Collins*, 47 Cal. 2d at 883.

District courts within the Ninth Circuit have applied this principle in various contexts. *See, e.g.*, *Pro 49 Dev., LLC v. Ness Express 1, LLC*, No. 2:24-CV-01850-JAM-JDP, 2025 WL 437549, at *3 (E.D. Cal. Feb. 7, 2025) (denying motion to dismiss claim for inducing breach of contract because defendants' right to privilege defense "'does not affirmatively appear on the face of the complaint,'" and it would be "improper for the Court to find that any such privilege exists" at the pleading stage); *O'Brien as Tr. of Raymond F. O'Brien Revocable Tr. v. XPO CNW, Inc.*, 362 F. Supp. 3d 778, 785–86 (N.D. Cal. 2018) (denying summary adjudication of intentional interference claim because "the question of privilege is whether the person's conduct was fair and reasonable under the circumstances, which is a question of fact to be determined by the jury.").[4]

---

[4] Even the district court in *Casden* denied a motion to dismiss asserting the same agent's immunity defense Sarian raises here, finding that the allegations against the company's owner and CEO were "sufficient to survive the motion to dismiss stage and otherwise provide [him] with notice of Plaintiff's tortious interference with

### 2. *Sarian's Purported Justifications Are for the Factfinder.*

Sarian also argues that the motivations the Complaint attributes to him "remain consistent with managing the company's liquidity and financial exposure." (Mot. at 7:15–21.) Even if that were so, it would not matter here.

In *Olivet v. Frischling*, the directors of a hospital allegedly caused the hospital to shift its business away from a partnership that included the plaintiffs and to a competing partnership the directors had formed for themselves. 104 Cal. App. 3d 831, 836 (1980), *disapproved of on other grounds by Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510, 521 n.10 (1994). The trial court sustained the directors' demurrer, and on appeal they argued that their status as directors gave them an absolute privilege. *Id.* at 837, 840. The Court of Appeal reversed, explaining that "[j]ustification is an affirmative defense and may not be considered as supporting the trial court's action in sustaining a demurrer unless it appears on the face of the complaint." *Id.* at 840 n.4 (quoting *A. F. Arnold & Co. v. Pac. Pro. Ins., Inc.*, 27 Cal. App. 3d 710, 714 (1972)). The *Olivet* court therefore held that "no complete justification for defendants' action appear[ed] on the face of plaintiffs' allegations" because it was "reasonably inferable" from the allegations that defendants were acting solely for themselves, even though "other more benign conclusions [could] also be drawn" from the allegations. *Id.* at 841. As the court put it, "a demurrer must be overruled if the complaint alleges facts which, viewed most favorably to the plaintiff, state even one possible cause of action." *Id.*

The same applies under Rule 12(b)(6), where the Court must "construe all inferences in the plaintiff's favor." *Koala*, 931 F.3d at 894. Sarian's contention that AHS may have had its own reasons to withhold payment is an argument for the factfinder. *Olivet* specifically addressed this point by stating that the defendants there

---

contractual relations claim pursuant to Federal Rule 8." *Multiple Energy Techs., LLC v. Casden*, No. CV 21-01149 PA (RAOX), 2021 WL 4733732, at *6 (C.D. Cal. June 23, 2021).

"may be able to justify their conduct by showing as a matter of fact that their actions were intended solely for the benefit of [the hospital], and not for personal gain." 104 Cal. App. 3d at 841. Sarian is also free to attempt to justify his conduct, but he cannot do so on the pleadings.

**D. <u>In Any Event, NLMM's Allegations Against Sarian Satisfy *Casden*.</u>**

Even if the Court were to reach the scope of Sarian's claimed immunity now, the Complaint still satisfies the standard the Ninth Circuit adopted in *Casden*.

***1. The Court Should Look to the Alleged Act.***

Like this case, *Casden* involved a CEO and majority shareholder alleged to have interfered with his company's obligation to pay a settlement in installments. 183 F.4th at 1153. The Ninth Circuit reaffirmed that an agent acting for and on behalf of his principal may be immune, but held that "an agent's immunity vanishes if he does not act for and on behalf of his principal when inducing the breach." *Id.* at 1155. That occurs when the agent "acts outside the scope of his agency such as by acting for himself at the expense of his principal," such as when "the supposed agent usurps corporate opportunities meant for the principal or engages in other forms of self-dealing to the detriment of the principal." *Id.* The inquiry is objective in that "[i]t is [ ] the act (not the motive) that counts." *Id.* at 1157. Motive is relevant "only to the extent 'it indicates whether or not [the principal]'s interest is actually being protected.'" *Id.* at 1158 (citation omitted).

Sarian's Motion, however, argues the opposite by contending that his personal stake is a "paradigmatic mixed-motive allegation" that preserves his immunity because liquidity "may serve both AHS and SARIAN." (Mot. at 7:9–14.) *Casden* expressly declined to make motive the test. 183 F.4th at 1157–58 & n.4. The mixed-motive rule that Sarian invokes protects only an agent who acts to benefit himself "while also seeking to advance the principal's interest," *id.* at 1155 (citing *Los Angeles Airways, Inc. v. Davis*, 687 F.2d 321, 328 (9th Cir. 1982)), which presupposes conduct that served the principal.

Indeed, Sarian acknowledges that a plaintiff may proceed by alleging that the agent "acted for a distinct interest adverse to the principal—for example, by actually appropriating a corporate opportunity or engaging in self-dealing at the principal's expense." (Mot. at 6:17–20.) NLMM's allegations fit within that description because the Complaint alleges, among other things, that Sarian directed the AHS Parties to withhold cash they had available to pay NLMM for the purpose of serving Sarian's personal interests, and that he did so at the cost of tripling the AHS Parties' immediate liability. (Compl. ¶¶ 25, 28–34, 46.)

### ***2. The Breach Left the AHS Parties Worse Off.***

Perhaps the most critical basis for the *Casden* court's reversal was the absence of any finding that the challenged conduct and the underlying breach were contrary to the company's interest. According to the Ninth Circuit, the facts the district court relied on "all … appear[ed] compatible with [the company]'s interests," noting that "[a]t least there has been no finding that Casden acted against those interests." 183 F.4th at 1155–56. The court analyzed this against the "reality that efficient breaches can advance a principal's interests." *Id.* at 1159.

Here, the Complaint alleges that when the AHS Parties failed to pay the $100,000.00 second installment and failed to cure based on Sarian's direction, the entire $300,000.00 unpaid balance accelerated, together with ten percent interest and NLMM's attorneys' fees and costs. (Compl. ¶¶ 19, 25, 29; *id.*, Ex. A § 2.4.) The AHS Parties, in other words, had "every reason to perform." (Compl. ¶ 29.) The extent of this resulting exposure to the AHS Parties—*i.e.*, a breach that triples a company's immediate liability, adds interest, and shifts its creditor's attorneys' fees and costs onto it—cannot plausibly be characterized as an efficient breach.[5] Instead, this breach

---

[5] Whether a breach was "efficient" in the sense *Casden* described, 183 F.4th at 1159, must be determined by reference to facts outside the pleadings and largely within Sarian's (and the AHS Parties') control, including the AHS Parties' available cash, the competing demands on it, and where the withheld funds went. Those matters

left the AHS Parties worse off, yet the Complaint alleges that Sarian directed it anyway, and that the AHS Parties would have paid but for his direction. (*Id.* ¶¶ 28–29, 34–35.)

***3. Sarian's Gains Were the AHS Parties' Losses.***

The Complaint also alleges that Sarian directed a breach that harmed the AHS Parties specifically *because* his interests run in the opposite direction. In *Casden*, the personal interest at issue was a bonus tied to the company's business performance, such that the CEO there gained only if the company did. 183 F.4th at 1153. The Ninth Circuit explained that immunity is not lost by "agents who act in their self-interest—to get a raise, to make more money, to sustain a family," since their actions "would generally also advance their employer's interests." *Id.* at 1155. The court therefore concluded that the conduct attributed to Casden, including his pursuit of a larger bonus, "appear[ed] compatible with [the company]'s interests." *Id.*

Here, NLMM alleges the inverse. The Sarian Family Trust holds 51% of AHS but 100% of HSA, so every dollar withheld from AHS's creditors and redirected to HSA moves from an entity in which Sarian captures roughly half the return to one in which he captures all of it. (Compl. ¶ 30.) HSA, according to Sarian's sworn testimony, is his "vehicle to continue acquiring hospitals" outside of AHS. (*Id.* ¶ 31.) Unlike a bonus tied to AHS's performance, the gap between Sarian's 51% stake in AHS and his 100% stake in HSA sets his interests against AHS's whether or not AHS prospers. Every dollar AHS withholds also enlarges the cushion protecting Sarian from his personal guarantees of AHS debt, which is his interest alone. (*Id.* ¶ 32.) Additionally, the Complaint alleges that AHS's cash is funding Sarian's personal fight to retain control of his hospital enterprise. (*Id.* ¶ 33.) None of these interests are

---

should be determined through discovery and tested on the merits. *See Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 245 (9th Cir. 1990) ("It is well-established that questions of fact cannot be resolved or determined on a motion to dismiss for failure to state a claim upon which relief can be granted.").

aligned with the AHS Parties' interests, whereas each of these interests is served by the breach that harmed AHS.

California courts have long placed this type of conduct outside the scope of the privilege Sarian now asserts. For instance, the *Olivet* court explained that "when a manager induces a breach in the hopes that he himself might fill the resultant economic void, he acts not as a servant, i.e., as one upholding his master's best interests, but rather as a naked competitor, devoid of the protections accorded those who labor under standards of fidelity, good faith and fiduciary responsibility." 104 Cal. App. 3d at 841 (quoted in *Casden*, 183 F.4th at 1155).

Sarian attempts to respond to this argument by claiming that the Complaint "identifies no payment from AHS to SARIAN, no transfer to an affiliate, no particular asset diversion, no related-party transaction, no date or amount of any alleged diversion, and no corporate opportunity actually taken from AHS." (Mot. at 7:3–6.) Nothing in *Casden* or in any other authority requires NLMM to plead, before the benefit of discovery, the internal financial workings or details of Sarian's hospital enterprise. *See McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991) (Rule 8(a) "does not explicitly demand such detail. It requires a short and plain statement of the claim showing entitlement to relief. All that is required are sufficient allegations to put defendants fairly on notice of the claims against them."). All that the Court needs to presently decide is whether NLMM has *plausibly alleged* that Sarian acted at the AHS Parties' expense; here, the Complaint alleges the breach, its cost to the AHS Parties, and the specific facts and sworn admissions that explain why Sarian would impose that cost. That is more than "enough fact to raise a reasonable expectation that discovery will reveal evidence" of the conduct NLMM alleges. *Twombly*, 550 U.S. at 556.

#### *4.* **Casden *Was Decided After Factual Findings.***

Finally, *Casden* further supports denial of the instant Motion because it was not decided on the pleadings. Instead, the Ninth Circuit reviewed a judgment entered *after*

*a jury trial* and reversed because "[n]o findings were made that Casden acted at the expense of his principal to benefit himself or that he otherwise acted outside the scope of his agency," and that "[a]bsent such findings, the district court erred in denying immunity." *Casden*, 183 F.4th at 1159. Indeed, the jury had actually made an advisory finding that Casden had acted in his official capacity on behalf of the company. *Id.* at 1153, 1156, 1159. In the present case, there have been no factual findings at all—only allegations, which must be taken as true.

*Casden*'s observation that "[i]mmunity is an inquiry at the threshold" does not suggest otherwise, because the court made that point in the context of explaining that immunity "should not turn on an after-the-fact determination of legality." 183 F.4th at 1159. The court was not suggesting that *disputed* questions of agency may be resolved without any factfinding.

**E. <u>Sarian's Arguments and Cited Authorities Are Unpersuasive.</u>**

Sarian leads with the rule that a party to a contract cannot be liable for interfering with its own contract. (Mot. at 5:4–10.) This rule is neither applicable nor in dispute. In *Applied Equipment*, the California Supreme Court held that a contracting party cannot be liable in tort for conspiring to interfere with its own contract, 7 Cal. 4th at 514, 520, and the Court of Appeal held in *Dryden v. Tri-Valley Growers*, 65 Cal. App. 3d 990, 999 (1977), that an action for inducing a breach "will not lie against the party to the contract."

As Sarian concedes, he is not a party to the Settlement Agreement. (Mot. at 4:2–3.) Additionally, neither *Applied Equipment* nor the authorities on which it relied involved an owner who interferes with his own company's contract, such that any language in *Applied Equipment* suggesting that such owners are immune "is dicta at best." *Woods*, 129 Cal. App. 4th at 352–53, 356 (explaining that, "since long before *Applied Equipment* was decided, [California] courts have allowed contract interference claims to be stated against owners, officers, and directors of the company whose contract was the subject of the litigation" and holding that trial court erred by

sustaining demurrer on the ground that defendant was not a stranger to the contracts); *see also PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1368, 1380 (2000) (recognizing that under California law, "[t]he legal fiction of the corporation as an independent entity was never intended to insulate officers and directors from liability for their own tortious conduct.").

Sarian's reliance on *Mintz v. Blue Cross of California*, 172 Cal. App. 4th 1594 (2009), fares no better. (Mot. at 6:1–7.) There, the only advantage alleged was a third-party claims administrator's compensation and financial incentives, and the court declined to recognize a "financial advantage" exception because "[e]very agent, in one way or another, acts for its own financial advantage when it acts for its principal." *Mintz*, 172 Cal. App. 4th at 1605 n.4, 1606. The Ninth Circuit agreed on that point, *see Casden*, 183 F.4th at 1155 & n.2, but it nonetheless held that immunity is lost when the agent acts "for himself at the expense of his principal," *id.* at 1155. That is what NLMM alleges here.

Assuming *arguendo* that Sarian's arguments are correct, his position as owner, officer, and director would place the challenged conduct beyond the reach of both contract and tort law: if Sarian is not a party to the Settlement Agreement, NLMM has no contract claim against him; and if he is, as he claims, also immune in tort, he may personally interfere with a contract by directing his companies to breach for his personal benefit and at his companies' expense, but at no risk to himself. The Ninth Circuit has recognized the problem with that result:

> To shield parties with an economic interest in the contract from potential liability would create an undesirable lacuna in the law between the respective domains of tort and contract. A party with an economic interest in a contractual relationship could interfere without risk of facing either tort or contract liability. This result is particularly perverse as it is those parties with some type of economic interest in a contract whom would have the greatest incentive to interfere with it. Such a result would hardly serve the established goal of protecting "a formally cemented economic relationship ... from interference by a stranger to the agreement."

*United Nat. Maint.*, 766 F.3d at 1007 (quoting *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 392 (1995)). Sarian's reading of the law would produce that same result here; but that result would be inappropriate absent further factual development of whether Sarian did, in fact, act "for himself at the expense of his principal." *Casden*, 183 F.4th at 1155.

### F. <u>Requests for Punitive Damages Are Not the Proper Subject of Rule 12 Motions.</u>

Sarian's challenge to NLMM's request for punitive damages also fails. *First*, this Court has specifically advised that "[a] plaintiff's prayer for a remedy precluded as a matter of law is not the proper target of a Rule 12 motion." (Initial Standing Order § 10.a (citing *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974–75 (9th Cir. 2010)).) That principle applies with greater force here because the punitive damages NLMM seeks *are* actually available on the tortious interference claim against Sarian. *See Summit Tech., Inc. v. High-Line Med. Instruments, Co.*, 933 F. Supp. 918, 927–28 (C.D. Cal. 1996) ("[A] Rule 12(b)(6) motion 'will not be granted merely because [a] plaintiff requests a remedy to which he or she is not entitled.'" (citation omitted)); *Celebrity Chefs Tour, LLC v. Macy's, Inc.*, 16 F. Supp. 3d 1159, 1164 (S.D. Cal. 2014) (declining to rule on propriety of plaintiffs' requests for punitive damages "because a Rule 12(b)(6) motion is the improper vehicle for raising this argument."); *see also Lopez v. Williams*, No. EDCV17882JGBSPX, 2017 WL 10560529, at *12 (C.D. Cal. Aug. 15, 2017) ("A motion to strike pursuant to Rule 12(f) is not the appropriate avenue for challenging a request for punitive damages.").

*Second*, Sarian's argument that *Applied Equipment* bars punitive damages here (Mot. at 8:1–7) overlooks that NLMM seeks punitive damages from Sarian for *his* tortious conduct. (Compl. ¶ 50.) Whether Sarian acted with malice—as alleged (*id.*)—is again a question for the factfinder. *See Linkenhoker v. Rupf*, No. C06-05432 EDL, 2007 WL 404783, at *9 (N.D. Cal. Feb. 2, 2007) ("Whether [defendant] acted with oppression, fraud or malice is a question of fact."); *see also* Fed. R. Civ. P. 9(b)

("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."); *cf. Banks v. Gill Distribution Centers, Inc.*, 263 F.3d 862, 869 (9th Cir. 2001) ("Whether an actor behaved wilfully and maliciously is ultimately a question of fact reserved for the trier of fact.").

*Third*, Sarian argues that NLMM's request for punitive damages is derivative of the tortious interference claim. (*See* Mot. at 7:24–27.) Because the tortious interference claim survives for the reasons set forth above, the remedy therefore does as well.

**V. CONCLUSION**

For the foregoing reasons, NLMM respectfully requests that the Court deny the Motion in its entirety. Should the Court be inclined to grant any portion of the Motion, NLMM respectfully requests leave to amend. *See Manzarek*, 519 F.3d at 1031 ("Dismissal without leave to amend is improper unless it is clear … that the complaint could not be saved by any amendment."); *see also Rosenberg Bros. & Co. v. Arnold*, 283 F.2d 406, 406 (9th Cir. 1960) (noting "extreme liberality generally in favoring amendments to pleadings").

DATED: September 23, 2026 Respectfully submitted,

FROST LLP

By: */s/ David Tiraturyan*

CHRISTOPHER FROST
BENJAMIN KASSIS
DAVID TIRATURYAN
Attorneys for Plaintiff
NORTHERN LIGHT MEDICAL MANAGEMENT, LLC

**CERTIFICATE OF COMPLIANCE**

The undersigned counsel of record for Northern Light Medical Management, LLC certifies that this brief contains 6,130 words, which complies with the word limit of L.R. 11-6.1.

DATED: September 23, 2026 FROST LLP

By: */s/ David Tiraturyan*
DAVID TIRATURYAN
Attorney for Plaintiff
NORTHERN LIGHT MEDICAL MANAGEMENT, LLC

# CERTIFICATE OF SERVICE

I hereby certify that on September 23, 2026, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court via the Court's CM/ECF system, which will automatically generate and send notice of this filing to all attorneys of record who have appeared in this case and who are registered users of the Court's CM/ECF system. Parties may access this filing through the Court's CM/ECF system.

DATED: September 23, 2026 FROST LLP

By: */s/ David Tiraturyan*
DAVID TIRATURYAN
Attorney for Plaintiff
NORTHERN LIGHT MEDICAL MANAGEMENT, LLC